JIM MARINO v. STATE OF NEBRASKA.

FILED FEBRUARY 13, 1924. No. 23324.

1.  Criminal Law: VENUE: WAIVER. The constitutional right to a trial before a jury of the county where the offense is alleged to have been committed, as provided in section 11, art. I of our Bill of Rights, is a mere personal privilege of the accused which he may waive. *Kennison v. State*, 83 Neb. 391.

2.  Jury: DISQUALIFICATION OF JUROR: WAIVER. Where a juror is disqualified to serve by reason of being a nonresident of the county where the offense is alleged to have been committed, the disqualification in practice is *held* to be waived by the failure to interrogate the juror on his *voir dire* as to his residence.

3.  ———: ———: ———. In a criminal prosecution a defendant does not waive his constitutional right to be tried before a jury of the county where the offense is alleged to have been committed, by his failure to challenge a juror who on his *voir dire* states that he is a resident and elector of the county where the case is being tried, when in fact he was a resident and elector of another county, which fact was unknown to the defendant and his counsel.

Marino v. State.

ERROR to the district court for Douglas county: L. B. DAY, JUDGE. *Reversed.*

*Baker & Ready,* for plaintiff in error.

: *O. S. Spillman, Attorney General,* and *Lee Basye, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, DAY and GOOD, JJ., SHEPHERD, District Judge.

DAY, J.

Jim Marino, hereinafter designated defendant, was convicted of murder in the first degree in the district court for Douglas county, and, conforming to the penalty fixed by the jury, was sentenced to life imprisonment in the penitentiary. As plaintiff in error he has brought the record of his conviction to this court for review.

A large number of assignments of error are noted in the brief, but, in the view we have taken of the cause, it seems unnecessary to discuss but one of them.

The main contention urged by the defendant is that Herbert M. Jackson, one of the jurors who sat in the case, was not a competent and qualified juror under the Constitution and laws of the state; that at the time of the trial, and for a long time prior thereto, the said Jackson was not a resident or elector of Douglas county; and that this fact was not known to the defendant or his counsel until after the rendition of the verdict.

The defendant contends that it was his constitutional privilege to have a trial by a jury of the county where the crime was alleged to have been committed, and that he was denied this right. This question was raised in an amended and supplemental motion for a new trial filed within three days from the rendition of the verdict, testimony in the form of affidavits being filed in support of and against the motion. Upon this phase of the case the state, while conceding that it was the constitutional privilege of the defendant to have a trial by competent jurors of Douglas county, argues: First, that Jackson was at the time of the trial a resident elector of Douglas county; and second, that,

Marino v. State.

even though he were not, the defendant is now precluded from raising the question of the qualification of the juror because he waived the privilege by neglecting to inquire of the juror upon his *voir dire* concerning his qualifications to sit as a juror.

Section 11, art. I of our Constitution, in so far as applicable to the question before us, provides as follows:

"In all criminal prosecutions the accused shall have the right to * * * a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

This language is too plain to require interpretation. This constitutional right is a personal privilege of the accused, and is not conferred upon him by any considerations of public policy. *State v. Crinklaw*, 40 Neb. 759; *Kennison v. State*, 83 Neb. 391. Being a personal privilege, it may be waived by the accused, and is generally held to be waived by failure to interrogate the juror in his examination on his *voir dire* as to his qualifications to sit as a juror; or it may be waived where the disqualification is known to the defendant or his counsel and the juror is not challenged. The reason for this rule is clearly stated in *Hickey v. State*, 12 Neb. 490, as follows:

" 'It is certainly clear that all jurors must have the qualifications of electors; and if one not having such qualifications is retained upon the panel without the knowledge of the party or his counsel, and after reasonable diligence used to ascertain that fact, when the jury is impaneled, a new trial should for that cause be granted. But it is equally clear that the proper time to take the objection is at the impaneling ot the jury; and it must be taken to have been waived, unless the party is able to show to the court, upon the hearing of the motion, that with the exercise of diligence he could not have taken the exception at the proper time. This is indispensable to prevent constant mistrials, and to protect the rights of the adverse party; otherwise the party taking the exception might lie by and take the chances of a verdict in his favor, and if

given adversely be entitled to a new trial as a matter of course.' Such in our view is a correct statement of the law. The person called as juror is sworn to answer questions touching his competency as a juror."

In addition to this constitutional provision, the statute prescribing the qualifications of jurors in counties of over 100,000 inhabitants, being applicable to Douglas county, among other things, provides, that all male citizens over the age of 25 years, having the qualifications of electors, etc., with certain exceptions, shall be competent to serve on all grand and petit juries. Section 9106, Comp. St. 1922.

This brings us to a consideration of the facts bearing on the question whether juror Jackson was a qualified juror to sit in the case, and, if not, did the defendant waive the disqualification? The record shows that on September 28, 1922, the juror received by registered mail a subpœna commanding him to report for jury service in Douglas county on a day named in the month of October. This notice, according to the provisions of the statute, was mailed to him at the address at which he voted at the last preceding general election, being 8409 North Thirty-first street, Omaha, Nebraska. The letter was forwarded to him at Aurora, Nebraska. Responding to the notice he appeared and served upon the jury in this case. In an affidavit made by the juror on October 24, 1922, he stated in substance that in November, 1921, he purchased a business in Aurora, Hamilton county, Nebraska; that on March 20, 1922, he moved his family to Aurora, and lived at No. 1313 M street, in said city; that he voted at the city election in April , 1922, and again at the primary election on July 17, 1922, at Aurora; and that he has considered Aurora his legal residence since he moved his family there on March 20, 1922; that when he received the notice he asked an attorney whether it would be necessary for him to obey the subpœna, and was told that it was; that when he went to Omaha to respond to the subpœna he told some of the officers that he was not a resident of Douglas county, but, notwithstanding this, he was not excused. It is not clear

Marino v. State.

who the officers were to whom he made this statement. Other affidavits show that the juror was living in a rented house in Aurora; that his family consisted of the juror, his wife, his mother-in-law, and a maid, and that the rent of the house had been paid during the month of October. Some effort was made on the part of the assistant county attorney to show by the juror that, notwithstanding he was living at Aurora, and had voted there and had made an affidavit that he regarded Aurora as his residence, his legal residence was in Omaha.  In support of this theory, in response to questions asked, the juror stated that he had always had in mind to return to Omaha as a permanent residence; that some of his effects were still in a room at No. 8409 North Thirty-first street, in Omaha, where his relatives lived, and that when in Omaha he always stopped there.  It also appears by the affidavits of attorneys representing the defendant that, before the jury were sworn, the general question was asked of the jury as a whole, whether they were residents and electors of Douglas county, and, if not, to so signify, and that neither the said Jackson nor any other jurors sitting in the box responded to such question in the negative.  Some of the jurors sitting in the box made affidavits to the effect that this question was not asked, and attorneys representing the state made affidavits that they did not recall that such question was asked. It stands unchallenged, however, that the county attorney elicited from the juror on his *voir dire* examinations that he was a resident of Omaha, Douglas county, Nebraska, and that he lived at No. 8409 North Thirty-first street. From the overwhelming weight of testimony, we think it is established that the juror was not a resident of Douglas county at the time he served on the jury.  His intention to ultimately return to Omaha as a permanent home does not alter the situation.

The next question presented is whether the defendant waived the disqualification of the juror by failing to interrogate him upon his *voir dire* as to his qualifications. Considering all of the circumstances presented in the rec-

ord, we think he did not. It is shown by the affidavits of the. defendant and his attorneys that they had no knowledge of the disqualifications of the juror until after the verdict was rendered. When the juror answered that he lived in Douglas county, in response to the inquiry of the county attorney, we think that defendant's counsel might well have relied upon his statement, but the testimony indicates that they went further and inquired as to his qualifications as an elector. We think that due diligence was exercised by the defendant in ascertaining the qualifications of the juror, and that the court, as well as counsel for the state and the defendant, were misled and deceived. The facts clearly indicate that he was neither a resident nor an elector of Douglas county.

The juror was drawn and summoned in the manner provided by law, his name being drawn from the voting list of 1920, but it appears that between the time his name was placed in the jury wheel, about January, 1921, and the time he was drawn for jury service, he had removed from Douglas county and taken a residence elsewhere.

Other questions are discussed in the brief, but as the case must be retried, and the alleged errors are not likely to occur again, we express no opinion upon them.

For the reasons above stated, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.