96 So.2d 693

## Virgil BEASLEY

v.

## STATE.

### 4 Div. 313.

Court of Appeals of Alabama.

Aug. 13, 1957.

Douglas Brown and Henry B. Steagall, II, Ozark, for appellant.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for State.

CATES, Judge.

Virgil Beasley was, on August 3, 1955, indicted for carnal knowledge, or abuse in

attempt thereat, of a female under twelve year of age. His trial September 14, 1955, in the Dale Circuit Court on a plea of not guilty resulted in a verdict of guilty with ten years' imprisonment as punishment. The defendant's motion for a new trial was overruled February 21, 1956, and the appeal was submitted here June 28, 1956.

The tendency of the State's evidence was:

The defendant, on the morning of July 14, 1955, had taken the prosecutrix, who was an eight year old girl, and six other young children swimming. He brought them back to the home of Mrs. Grace Pope, the mother of two of the group. Beasley testified he had started drinking that morning about 9:00 or 9:30 o'clock. He kept at it in some degree during the rest of the day.

In the afternoon Beasley, Mrs. Pope, her daughter, and two other girls—the prosecutrix and her twelve year old sister— went into the countryside to the home of Henry Holder where Beasley got whiskey. Thence the five of them went to Charlie Glenn's house. Thereafter, Beasley's drinking apparently affected his driving; he "almost ran into" a fence, tree, then a post, and narrowly missed going into a ditch. Crossing a stream, he turned the car into some woods, as he testified, to allow himself to sober up.

The girls went off into the underbrush and were followed by Beasley who coerced each of them to yield to a perverted sexual act. This interlude was broken up by Mrs. Pope's blowing on the automobile horn. When the four of them returned to the car, Mrs. Pope wandered off and lay down beside the trail. One witness testified Beasley, on returning from the underbrush, "pushed her (Mrs. Pope) on the car and bumped her head and she passed out." It was then that the State would show the act complained of happened. The State's evidence, if believed, amply established and corroborated the commission of the offense.

The testimony adduced by Beasley was contradictory of the essential facets of the case for the prosecution. This presented a question for the jury.

Here Beasley says he did not have a fair trial at nisi prius because:

■ (1) At the noonday recess during the trial, Mr. D. A. Culverhouse, one of the jurors, contrary to the judge's direction, detached himself from the others, having returned to the jury room to retrieve his hat. Consequently, he lost contact with his fellows for some ten to fifteen minutes. The State did not attempt to meet the burden cast upon it to show this juror had not been tampered with. See Huddleston v. State, 37 Ala.App. 57, 64 So.2d 90, 97. However, the trial judge did call the errant juror as the court's witness. This examination clearly established that no one had spoken to Mr. Culverhouse and that he had not spoken to anyone about the case. This is sufficient proof to rebut the presumption of improper influence. Davis v. State, 209 Ala. 409, 96 So. 187; Wright v. State, 38 Ala. App. 64, 79 So.2d 66.

(2) On voir dire when the court was qualifying the jury, the venire was asked in effect if any among them had ever been convicted of a crime involving moral turpitude. William O. Jenkins was silent as to the question. Later he was chosen as one of the twelve impaneled who tried the case. In support of one of his grounds for a new trial, Beasley annexed a certified copy of a docket entry and bench notes of the Dale Circuit Court showing in 1933 a conviction and judgment (with appeal withdrawn) in a case of adultery against one Otto Jenkins. One of the jurors made an affidavit which was also annexed to the motion that the William O. Jenkins who served on the jury and Otto Jenkins are one and the same person. Beasley's counsel have both made affidavits as to their ignorance of Jenkins's conviction. There were affidavits the tenor of which was that Jenkins was active in the deliberations of the jury for prescribing possibly as much as the

death penalty. The record fails to show the filing of any counter affidavits or any testimony on the hearing of the motion for a new trial.

Our enquiry on the ruling of the trial judge begins with, *first,* was conviction of adultery a ground for Jenkins's being mandatorily excused as a petit juror; *second,* did the defendant exercise due diligence to keep unqualified jurors being put upon him; and, *third,* if the first two questions are answered "yes," then was Jenkins's presence on the jury such a ground for a new trial that, upon proof of the averred facts of his conviction, the trial judge had no discretion but to grant a new trial?

As to the makeup of the jury roll and of the names in the jury box, Code 1940, Title 30, § 21, as amended by Act No. 325, General Acts 1943, p. 309, approved July 1, 1943, reads in part:

"* * * but no person must be selected * * * who has ever been convicted of any offense involving moral turpitude. * * *"

A parallel path is followed by Code 1940, Title 30, § 55, as amended by Act No. 260, Acts 1955, pp. 605, 606, approved August 23, 1955, which, in subdiv. 5, provides a good ground for challenge (inter alia) that a venireman "has been convicted of a felony." Code 1940, Title 30, § 64, relating to the examining and selecting of petit jurors in capital cases, provides that, "the court must inquire into and pass upon the qualifications of all the persons * * * to serve as jurors." See O'Rear v. State, 188 Ala. 71, 66 So. 81. In Hendry v. State, 215 Ala. 635, 112 So. 212, our Supreme Court construed predecessor provisions to §§ 55 and 64 in pari materia.

In Brown v. Woolverton, 219 Ala. 112, 121 So. 404, 406, 64 A.L.R. 640, the court, per Foster, J., said:

"* * * 'At common law the grounds for challenge were classified under four heads, as follows: (1) propter honoris respectum; as, if a lord of Parliament be impaneled on a jury, he may be challenged by either party, or he may challenge himself; (2) propter defectum; as if a juryman be an alien born, this is defect of birth; (3) propter affectum, as for suspicion of bias or partiality—this may be either a principal challenge, or to the favor; (4) challenges propter delictum are for some misdemeanor or crime which affects the juror's credit and renders him infamous, as for conviction of treason, felony, perjury, or conspiracy. A challenge propter affectum is of two kinds: a challenge to the favor and for principal cause.' 16 R.C.L. 254. The common-law grounds as far as applicable to our system and not changed by statute remain for our guidance. Our statute has added certain grounds of challenge for cause, *but they are not exclusive of the common law remaining unchanged. * * *"* (Italics ours.) See also dictum in Wyatt v. State, 36 Ala.App. 125, 57 So.2d 350.

And in Bacon's Abridgment, we find under the heading of *Juries:*

(E) 1. "A principal (cause of challenge) is grounded on such a manifest presumption of partiality, that if it be found true it unquestionably sets aside the array or the juror * * *"

(E) 2. "Also, infamy is a good cause of challenge to a juror; * * * And it hath been holden, that such exceptions are not solved by a pardon. * * *" Brown v. Crashaw (1624), 2 Bulstrode 154.

In State v. Brockhaus, 72 Conn. 109, 43 A. 850, 851, the court, in considering review of a judgment denying new trial on the ground a juror was under age, by way of dictum, said:

"As to the qualifications of jurors, there are some which may be called inherent. They are those necessary to impartial and honest action. A disqualification of this kind is ordinarily

fatal, unless it is known to exist at the time of trial, and is then waived. The want of other qualifications directed by custom or statute for general reasons of policy, and which cannot substantially affect the capacity or impartiality of a juror, does not constitute a defect, unless discovered and taken advantage of before verdict. This seemingly underlies the distinction drawn at common law between challenges *propter affectum* and *delictum,* and challenges *propter defectum.* It furnishes the test whether the irregularity is one absolutely healed by verdict, or is one giving sufficient ground for new trial, unless known to and waived by the party complaining. * * *"

Guilt of adultery involves moral turpitude, Norris v. State, 229 Ala. 226, 156 So. 556. And while, under Code 1940, Title 14, § 16, the *third* conviction of adultery with the same paramour is punished as a felony (Code 1940, Title 1, § 7), we assume (without deciding) that here Jenkins was convicted of a misdemeanor. Hence, a judgment of adultery, obeyed and endured, though only for a misdemeanor, is a ground for challenge for cause to the selection of a juror because (in addition to its statutory effect of precluding a man from the jury roll, § 21, supra) at common law it was for an infamous offense for which "he hath received judgment of the pillory, tumbrel, or the like; or to be branded, whipt, or stigmatized; or if he be outlawed or *excommunicated,*" (italics supplied) and would support a challenge propter delictum, iii Bl. Com. 361, 362, which cites Coke 1 Inst., p. 156. Blackstone further says that in 1650 wilful adultery was made a capital crime, though at the Restoration the offense was relegated to the church courts, 13 Chas. II, St. 1, c. 12. So that Stephen says that in his day adultery would have still been theoretically cognizable before the Archdeacon. But this placing of jurisdiction in the church courts did not make adultery any the less of an offense, since from the time of Henry VIII the ecclesiastical courts became the King's courts and their law was part of

the English common law, MacKonochie v. Lord Penzance (1881), 6 A.C. 424, at p. 446. Even with the migration of our ancestors there came established churches; and courts either of, or suffragan to, the church sat in the colonies—as witness the witchcraft trials in New England.

"The sanction by which Ecclesiastical courts enforced their decrees was excommunication."—Stephen, ii History of Criminal Law 413. The author goes on to give instances of the Court of High Commission (created under Elizabeth I, dissolved 1640) fining persons as much as two thousand pounds for adultery and imprisoning others for four years, ii H.C.L. 423. Holdsworth states that in Stuart and Tudor times a bishop might have a prison. Upon review of these authorities, we conclude that conviction and punishment for adultery constitute a common law disqualification of a man for jury service propter delictum.

Section 55, as amended, supra, is illustrative and not an exclusive enumeration of challenges for cause, being in derogation of the common law only where there is conflict with its expressed grounds, Mullis v. State, 258 Ala. 309, 62 So.2d 451; Lewis v. State ex rel. Baxley, 260 Ala. 368, 70 So.2d 790. While these cases and that of Brown v. Woolverton, supra, discuss challenges for bias or favor, i. e., Coke's "propter affectum," in City of Birmingham v. Lane, 210 Ala. 252, 97 So. 728, the court said:

"It is sufficient to say that a trial court should excuse a juror when he is shown to be an unsuitable person to serve; in discharging the duty of passing on the qualification of jurors there should not be an arbitrary exercise of that power, but should be 'apparently for a good purpose in the interest of justice.' * * *"

Thus we are brought to the conclusion that a conviction of adultery, though only for a misdemeanor, is both a disqualification (under § 21, supra) and a common law ground for challenge to the principal cause *(even though not a ground under § 55, sub-*

*div. 5)* ; and, therefore, under § 64, it is contemplated that such a prospective petit juror should be weeded out by the trial judge even though by some neglect or design of the jury commissioners his name should appear on the venire.

■ However, the defendant cannot sit back and invite error because of a juror's disqualification. He must see that the judge either examines the venire as to the qualification in question or ask the court to let him put questions touching the matter, Batson v. State, 216 Ala. 275, 113 So. 300. Thus, in City of Birmingham v. Lane, supra, we find:

"It is further established that, if the injured party had notice of the disqualification of the juror, and did not invoke the action of the court to eliminate such juror, such party may not thereafter effectively use such disqualification for the purpose of procuring a new trial. * * *"

In Wassum v. Feeney, 121 Mass. 93, Gray, C. J., said:

"When a party has had an opportunity of challenge, no disqualification of a juror entitled him to a new trial after verdict. * * *"

■ The claimed error in Wassum v. Feeney, supra, was of a minor being impaneled, and though this "defectum" was not discovered until after verdict, the court, albeit defendant had made a timely motion to set aside the verdict, held it was not error to overrule the motion, which (absent a showing of abuse) was addressed to the trial court's discretion. However, the learned opinion is careful to distinguish Rex v. Tremearne, 5 Barn. & Cr. 254, wherein a verdict by a jury on which an infant, neither summoned nor returned as a venireman, had served was set aside because the defendant had no means of challenging him. This distinction emphasizes "the opportunity to challenge" which we consider important here. Our statute

(§ 64, supra) affords this opportunity, except where a deception makes it nugatory.

In Daniels v. State, 88 Ala. 220, 7 So. 337, 338, the court said:

"The rule is generally stated to be that after a juror has been accepted by both parties, and the jury has been impaneled, or the trial has been entered on, by swearing the juror or otherwise, the right to challenge is waived, unless for cause, where the disqualification was unknown at the time, and could not have been discovered by the exercise of proper diligence on the part of the objector. Spigener v. State, 62 Ala. 383; Smith v. State, 55 Ala. 1; Roberts v. State, 68 Ala. 515. * * *"

■ Ordinarily a man cannot be said to waive that which he does not know, or by the exercise of reasonable diligence cannot know, e.g., Bell v. Birmingham Broadcasting Co., 263 Ala. 355, 82 So.2d 345. But waiver here applies to the right of challenge which is a known legal right. This view of waiver makes critical the aspect of the case arising from Jenkins's failure to answer the trial judge's question pertinent to his conviction.

Along this same line, we quote from 50 C.J.S. Juries § 251:

"Subject to some exceptions, the right to challenge or object for the disqualification of a juror may be waived by failure to object in proper time, even though the objecting party was previously ignorant of the disqualification. (See Batson v. State, supra.)

\* \* \* \* \* \*

"* * * It has been held that an exception to the rule should be made in cases where the juror was in fact duly examined and testified falsely (citing People v. Ortiz, 320 Ill. 205, 150 N.E. 708; Higgins v. Commonwealth, 287 Ky. 767, 155 S.W.2d 209—dictum; Berg v. Griffiths, 126 Neb. 235, 252 N.W. 918, vacated on other grounds 127

Neb. 501, 256 N.W. 44, 102 A.L.R. 1124; Marino v. State, 111 Neb. 623, 197 N.W. 396; Durham v. State, 182 Tenn. 577, 188 S.W.2d 555, 16 A.L.R. 746), or failed to disclose material facts, or where his answers were such as reasonably to mislead the examining party and prevent a specific inquiry as to the particular ground of objection subsequently discovered; but false answers of the juror are no excuse for failure to object if the party or his counsel is aware of their falsity. Thus, while in some cases it is held that previous ignorance of the disqualification will excuse the failure to make the objection earlier, and that advantage of it may accordingly be taken after verdict, it is generally required that it must affirmatively appear that the objecting party did not previously know of the ground of objection, and had used diligence to discover it, or could not have discovered it by the use of reasonable diligence (citing Taylor v. State, 222 Ala. 140, 131 So. 236; State v. Parsons, 171 S.C. 449, 172 S.E. 424 (impersonation) )."

Of this exception to this rule of waiver, our Supreme Court, in a case of substitution of a juror without notice to defendant, said:

"It is said in City of Birmingham v. Lane, * * * that, where the disqualification was unknown to the injured party (and we may add the condition that he was not negligent in that respect), it is properly made the basis of motion for a new trial." Taylor v. State, supra [222 Ala. 140, 131 So. 238].

Raub v. Carpenter, 187 U.S. 159, 23 S.Ct. 72, 47 L.Ed. 119, was a review of refusal of a motion for new trial in a will contest wherein one of the jurors falsely answered to the effect that (a) he was over 21 years of age, and (b) he had never been convicted of a crime involving moral turpitude. Fuller, C. J., in denying the writ of error, cited by way of dictum (as to a disqualification propter delictum) Goad v. State, 106 Tenn. 175, 61 S.W. 79, and State v. Powers, 10 Or. 145. The former of these cases has some dictum as to an objection "propter defectum," which seems to be an application peculiar to Tennessee, and that robbing the mails with consequent incarceration in a reformatory was not a crime attended with "infamy," supposedly because of the place of imprisonment. See Ex parte Wilson, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89, 21 Words & Phrases, Infamy, p. 264. The Powers case is an uncritical analysis of many cases with little or no eye to distinguish between disqualifications affording challenges to principal cause (i. e., without showing more) and those to the favor (i. e., where the objector carries the burden of proof to show some prejudicial bias in the challenged juror).

Inasmuch as the juror here stood mute when he should have spoken, he practiced a deception on the court and the defendant, and the deception was as to a matter reflecting on his credibility. We find similar cases in State v. Hermann, Mo., 283 S.W. 2d 617 (new trial held mandatory—juror convicted of mailing obscene matter); Williams v. State, 12 Ga.App. 337, 77 S.E. 189 (held error to deny new trial where juror convicted of simple larceny); Wright v. Davis, 184 Ga. 846, 193 S.E. 757 (juror convicted of automobile theft personated his father—held error to deny new trial); Rex v. Wakefield, [1918] 1 K.B. 216 (personating employer—venire de novo awarded); Rex v. Tremearne, supra (personating father—new trial granted). All of these support the granting of a new trial or hold the trial court in error for denying the motion, seemingly because the defendant had made a sufficient show of due diligence. See Leach v. State, 245 Ala. 539, 18 So.2d 289, denying certiorari to this court in 31 Ala.App. 390, 18 So.2d 285 (held error to deny new trial where deceptive silence of juror misled defendant in using strike or peremptory challenge); also Hughes v. State, 105 Tex.Cr.R. 57, 284 S.W. 952 (juror felon—substantial

error cannot be waived) ; Hooper v. State, 126 Tex.Cr.R. 118, 70 S.W.2d 431 (juror felon—defendant cannot waive) ; Johnson v. State, 129 Tex.Cr.R. 162, 84 S.W.2d 240 (dictum that judgment void revised in Ex parte Bronson, 158 Tex.Cr.R. 133, 254 S.W. 2d 117) ; Lund v. Third Jud. Dist. Ct., 90 Utah 433, 62 P.2d 278 (trial judge granted motion for new trial because juror convicted felon—affirmed) ; Mathisen v. Norton, 187 Wash. 240, 60 P.2d 1 (no waiver because juror untruthful) ; Shulinsky v. Boston & M. R. R., 83 N.H. 86, 139 A. 189 (juror's silence as to financial relation to plaintiff denies fair trial—error to deny new trial) ; Nuchols v. Commonwealth, 312 Ky. 171, 226 S.W.2d 796, 13 A.L.R. 2d 1478 (frustrates exercise of peremptory challenge) ; Lindemann v. San Joaquin Cotton Oil Co., 5 Cal.2d 480, 55 P.2d 870 (dictum—fact of juror's bias disputed) ; Balthrop v. Atchison, T. & S. F. R. Co., 142 Cal.App.2d 823, 299 P.2d 341 ; and Taylor v. State, supra (man with same name as qualified man).

■ If an error of substance occurred in impaneling this juror, the defendant to claim injury therefrom must show himself free from fault in bringing about or in discovering the mistake. Thus, in Marino v. State, 111 Neb. 623, 197 N.W. 396, 398, the court said:

> " * * * We think that due diligence was exercised by the defendant in ascertaining the qualifications of the juror, and that the court, as well as counsel for the state and the defendant, were misled and deceived. The facts clearly indicate that he was neither a resident nor an elector of Douglas county."

As to due diligence, we consider that a defendant is not required to search the records of all the courts of this State and of its municipalities running back to the time when the oldest venireman became 14 years of age. The rule may be different as to a showing of a pending indictment under § 55 (subdiv. 3), as amended, supra,

or where the defendant's attorney has represented the offending juror. See State v. Magee, 48 La.Ann. 901, 19 So. 933.

■ On the record before us the defendant has carried his burden of persuasion as to (1) Jenkins's disqualification, and (2) defendant's exercising due diligence to have avoided having put on him a juror who was so disqualified. Since he had not waived the disqualification, he is not therefore debarred by waiver from assigning Jenkins's presence as a ground for a new trial.

■ The third point of enquiry as to juror Jenkins's serving while disqualified, is whether or not his presence was of such a nature as to manifest an indwelling injury to the defendant, which, after proof having been made of his conviction, made it mandatory upon the trial court to grant Beasley a new trial. Regardless of the doctrines in other jurisdictions, such as Commonwealth v. Wong Chung, 186 Mass. 231, 71 N.E. 292, 1 Ann.Cas. 193; Sturrock v. State, 229 Ind. 161, 96 N.E.2d 226; Raub v. Carpenter, supra (dictum) ; or of our cases upon other facts, e. g., Carson v. Pointer, 11 Ala.App. 462, 66 So. 910; Edwards v. State, 28 Ala.App. 409, 186 So. 582, we believe the question in Alabama is well settled as shown by the following quotation from our Supreme Court, per Lawson, J., in Rosenbush Feed Co. v. Garrison, 251 Ala. 245, 37 So.2d 106, 109:

> "If Mills had served on the jury which tried the case, the trial court's action in refusing to grant a new trial to defendants would require a reversal, for we are in accord with the opinions of the Court of Appeals hereafter cited, which hold that a new trial must be granted where a prospective juror did not answer correctly the material questions propounded by the court in qualifying the jury and where such juror was accepted on the jury which tried the case. A new trial must be granted under such circumstances ir-

respective of whether the concealment was deliberate or unintentional. Leach v. State, 31 Ala.App. 390, 18 So.2d 285; Griffith v. State, 31 Ala.App. 432, 18 So.2d 284. * * *"

We find further dictum in the same vein in Parkinson v. Hudson, 265 Ala. 4, 88 So.2d 793. In view of these recent expressions of renewed confidence in Leach v. State, supra, we find reversible error in the denial of the motion for a new trial.

To have held the court below not in reversible error here would be but paltering in a double sense by putting the word of promise to the appellant's ear, but to break it to the hope. We conclude that this juror's conviction was, at common law (as well as under § 21, supra), a disqualification propter delictum, and hence ground for challenge for principal cause. We consider that, upon the record, the trial court should have granted Beasley's motion for a new trial.

This cause is due to be reversed and remanded for proceedings consistent herewith.

Reversed and remanded.