Appellant was convicted of robbery and the jury fixed his punishment at ten years imprisonment in the penitentiary. He was represented at arraignment and trial by retained counsel. He pleaded not guilty. After conviction he was found to be indigent and he was furnished a free transcript. Trial counsel was appointed to represent him on appeal. His counsel failed to file a brief and this Court appointed counsel to represent him on this appeal.
Appellant made application to be tried as a Youthful Offender and his application was referred to a probation officer for an investigation and report. Upon an examination and consideration of the probation officer's report, the Court denied appellant's application to be treated as a Youthful Offender.
In the light of appellant's motion to exclude the State's evidence we will summarize as much of the State's evidence as is necessary in treating the issues raised on this appeal.
On August 19, 1975, Charles E. Jackson, a graduate student of Alabama A M University, and his roommate, Charles Woods, were watching television at their Ebony Heights house located at 215 Salem Drive in Huntsville, Madison County, Alabama. As Jackson rose to leave the room to go to the bathroom during a commercial, someone knocked on the door, which was not locked, and Jackson said, "Come in" and continued walking toward the bathroom. Upon hearing someone call him Jackson turned and came face to face with appellant who was pointing a pistol at him.
Appellant grabbed Jackson by the arm and led him back to the living room where they found another tall and big black man holding a pistol on Charles Woods. The gunmen pushed and shoved Jackson and Woods from room to room still holding the pistols on them while they made a thorough search of the entire house. The bandits demanded money and jewelry. Appellant and his companion took from Jackson at gunpoint approximately $50.00 from his person and $600.00 that Jackson had in an envelope, half of which belonged to Woods. The gunmen also took from Jackson a watch and a ring and some items of clothing. They also took $73.00 from Woods and some clothing.
During the robbery appellant clutched Jackson's arm from time to time commanding him to move from place to place in the house. The robbers were in the house from 30 to 40 minutes and Jackson and Woods got a good look at them in close quarters in a well lighted house.
Both Jackson and Woods were physically abused and threatened and at one point appellant struck Woods on the back of the head with his pistol and he was carried to the hospital for x-rays. Before the robbers left they made Jackson and Woods stand against a wall and ordered them not to move. A few moments later one of the gunmen came back in the room just to be sure the robbery victims were still standing against the wall.
When the victims were certain the robbers had left, Jackson went next door and reported the robbery to the police department. The police officers arrived about 20 minutes later and got a description of the robbers. Jackson described appellant as having on some overalls, a light colored shirt, a straw hat and sunglasses. He described the other robber as wearing an Army fatigue jacket, a shirt with the sleeves cut out and jeans. He also gave the officers their approximate height and weight. One was over six feet tall and weighed about 180 to 190 pounds and appellant was much shorter.
Later at the police station Jackson and Woods were shown more than 20 photographs, separate and apart from each other, and both made independent identifications of appellant's photograph without suggestions from the officers. Over appellant's objection his picture was introduced into evidence. Both Jackson and Woods made positive in-court identification of appellant as one of the robbers. *Page 82 
After the jury had deliberated for some time the jury returned to the courtroom to pose a question to the Court. It developed that one of the jurors was a teacher at A M University and that Jackson was in at least one of his classes. The jury wanted to know if this fact would have any bearing on their verdict.
The Court responded as follows:
 "THE COURT: Ladies and gentlemen of the jury, I have your question, I will answer it for you. `A member of the jury recognized Mr. Jackson, a witness for the State as being in one of the classes at A M University after the trial was in progress, does this have any bearing on the verdict we may render?' Let me answer it in this fashion. The attorneys have the opportunity to ask you any questions about any knowledge you may have of any person prior to selecting you as jurors, and they can strike from the venire or panel rather, any person they wish. The fact that you might know someone that you didn't recall until the course of the trial would have no bearing on whether or not, in my judgment you could render a legal verdict, so you may return and consider your verdict."
The fact that one of the jurors was a professor at the college attended by Jackson does not constitute a legal ground to challenge that juror's qualification to sit as a juror.
Appellant's counsel was given every opportunity to test the qualifications of the jury panel. Failure to use due diligence in testing jurors as to their qualifications or grounds of challenge is an effective waiver of grounds of challenge and a defendant cannot sit back and invite error because of a juror's qualification. Batson v. State, 216 Ala. 275, 113 So. 300;Beasley v. State, 39 Ala. App. 182, 96 So.2d 693; Aaron v.State, 273 Ala. 337, 139 So.2d 309.
In Simmons v. U.S., 390 U.S. 377, 88 S.Ct. 967,19 L.Ed.2d 1247, the Court said:
 "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, [18 L.Ed.2d 1199], and with decisions of other courts on the question of identification by photograph."
Jackson and Woods based their identification of appellant more on a face to face confrontation for 30 to 40 minutes than on the photographs of appellant.
Appellant claimed an alibi. He testified that he was visiting an aunt in Tennessee at the time of the robbery. There was no supporting testimony for his alibi. Alibi evidence presents a jury question and the jury did not believe his testimony.
We have carefully searched the record and find no reversible error.
AFFIRMED.
All the Judges concur, except CATES, P.J., not sitting. *Page 83