MAIN, Justice.
James Jordan, Sara Jordan Muschamp, and William Jordan, as representative of the estate of Emma K. Jordan, deceased (hereinafter referred to collectively as “the plaintiffs”), sued Thomas Jefferson Foundation, Inc. (“TJF”), in the DeKalb Circuit Court, stating the following counts: (1) misrepresentation; (2) “slander, libel, and trade infringement”; (3) fraud; (4) wantonness; (5) suppression; (6) negligence; (7) breach of contract; and (8) tortious interference with business relations. Only the enumerated claims (6), (7), and (8) above were presented to the jury; the remaining claims were disposed of before the case went to the jury. The jury returned a verdict in favor of TJF on all three counts, and the trial court entered a judgment on the jury’s verdict.
*647 The plaintiffs filed a motion for a.new trial, arguing, in pertinent part, that TJF did not disclose that it had insurance and that, therefore, “the venire was not properly qualified as to insurance.” The .plaintiffs’ brief, at 4. The trial court granted the plaintiffs’ motion for a new trial and vacated its prior judgment, basing its new ruling solely on the plaintiffs’ argument that the trial court, believing there was no insurance, had erroneously , prevented-the plaintiffs from conducting voir dire on the issue of insurance. TJF appeals, arguing, among other things; that the trial court erred in granting the plaintiffs’ motion for a new trial. The plaintiffs have cross-appealed, arguing that the trial court erred in granting TJF’s Rule 50(a), Ala. R. Civ. P., motion for a judgment as a matter of law (“JML”)[1] and dismissing, as a matter of law, the plaintiffs’ suppression claim. We reverse the trial court’s judgment insofar as it granted the plaintiffs’ motion for a new trial, and we affirm the trial- court’s judgment insofar as it granted TJF’s motion for a JML on the plaintiffs’ suppression claim.

I. Facts and Procedural History

TJF is a nonprofit organization that owns and curates a museum in Monticello, the historic home of Thomas Jefferson, located near Charlottesville, Virginia. Visitors to Monticello can view items that were once the property of Thomas Jefferson, reproductions of items that were once the property of Thomas Jefferson, and “period pieces,” which, although not the property of Thomas Jefferson, were made during his lifetime. Some of the items on display at Monticello are owned by TJF, and some items are on loan from individuals. TJF conducts continuous research on Jefferson’s life, including research regarding property thought to have been owned by him. This research (1) can confirm that a particular item is authentic and/or that it was once owned by Jefferson; (2) can confirm that a particular item is not authentic and/or that it was not once owned by Jefferson; and (3) can reveal that items once thought to be authentic and to have been the property of Jefferson (two issues relevant in this case) are, in fact, not authentic and/or are not property previously owned by him.
In 1957, Juliet Graves Cantrell, a resident of Rome, Georgia, lent TJF a piece of furniture known as a “filing press” for display at Monticello. The plaintiffs claim that it is undisputed that the filing press once belonged to Jefferson. Cantrell also owned a piece of furniture known as a “dressing table,” which was thought to have been the property of Jefferson, although Cantrell’s belief apparently was never officially confirmed. Cantrell passed away sometime in or about 1976 and bequeathed the filing press, which was then on loan to TJF, and the dressing table to Emma. In 1977, Emma lent TJF the dressing table for use in the museum. Certain documents entitled “loan agreements” were executed with TJF when the filing press and, later, the dressing table, were lent to TJF, and there were subse *648 quent loan • agreements ' executed by Emma,[2] James, and Sara.[3]
The loan agreements for the filing press and the dressing table executed in 1976 and 1977, respectively, were silent as to whether TJF had the authority to perform any “conservation” work on the furniture without first obtaining permission from Emma, James, and/or Sara, the owners of the property;, however, in 1977, Sara drafted a letter to TJF granting it permission to perform conservation work on the dressing table. The 1976 loan agreement governing the filing press, was replaced by a new loan agreement in 1987, which stated that TJF could not perform any conservation work on the filing press without James’s permission. The 1977 loan agreement governing the dressing table was replaced by a new loan agreement in 1988, which stated that TJF could not perform any conservation work on the dressing table without Sara’s permission. However, TJF had already performed conservation work on the filing press in 1988 and on the dressing table in 1984, without first receiving authorization from either James or Sara, prior to the execution of the 1987 and 1988 loan agreements that expressly required James’s and/or Sara’s permission to perform any conservation work on the furniture.
In November 2007 (30 years after the loan agreements were executed in 1976 and 1977), the plaintiffs removed the furniture from" Monticello and shipped it to Sotheby’s, an antiques auction house located in Manhattan, New York, to be sold at auction. Thereafter, Sotheby’s “research consultants” investigated the authenticity of the dressing table and questioned whether it had actually been owned by Jefferson. Sotheby’s consultants also determined that the filing press was not in sufficiently original condition to be offered for bid. Therefore, Sotheby’s declined to place either piece of furniture for sale at auction; according to the plaintiffs, Sothe-by’s found that the value of the dressing table had been “destroyed” and that the filing press then had a market value of $20,000 to $30,000, whereas “its fair market value would be around $4 million,” the plaintiffs’ brief, at 21, had it not been the subject of the conservation work by TJF. In any event, Sotheby’s identified TJF as the most likely purchaser of the furniture if it were to be sold at auction. Accordingly, James and Sara offered to sell the furniture to TJF; however, according to the plaintiffs, TJF declined to purchase the furniture “at a price commensurate with the fair market value of the ... furniture.” The plaintiffs then sued TJF, alleging that, “[a]s a proximate result of the aforesaid acts[, i.e., the allegedly unauthorized conservation work on the furniture by TJF], the plaintiffs are unable to sell the subject chattels for their true market value that could only have been achieved at a Sotheby’s auction.”
As stated above, only the plaintiffs’ claims of negligence, breach of contract, and tortious interference with business relations were presented to the jury. The jury returned a verdict in favor of TJF, and the trial court entered a judgment on that verdict. However, the trial court subsequently granted the plaintiffs’ Rule 59, Ala. R. Civ. P., motion for a new trial and vacated its previous judgment. TJF appeals from the trial court’s order granting the plaintiffs’ motion for a new trial; the *649 plaintiffs cross-appeal from the trial court’s order granting TJF’s motion for a JML as to their suppression claim.

II. Standards of Review

A. Motion for a New Trial

“When the court grants a motion for a new trial on grounds other than a finding that the verdict is against the great weight or preponderance of the evidence, this Court’s review is limited.
“ ‘ “It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.” ’
“Curtis v. Faulkner Univ., 575 So.2d 1064, 1065-66 (Ala.1991) (quoting Kane v. Edward J. Woerner & Sons, Inc., 543 So.2d 693, 694 (Ala.1989), quoting in turn Hill v. Sherwood, 488 So.2d 1357, 1359 (1986)).”
Baptist Med. Ctr. Montclair v. Whitfield, 950 So.2d 1121, 1125-26 (Ala.2006).

B. Motions for Judgments as a Matter of Law

“ ‘The standard of review applicable to a ruling on a motion for [a JML] is identical to the standard used by the trial court in granting or denying [that motion]. Thus, in reviewing the trial court’s ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.
[[Image here]]
“ ‘... In ruling on a motion for a [JML], the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been “substantial evidence” before the jury to create a question of fact. “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’
“American Nat’l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366-67 (Ala.1993). (Citations omitted.)”
Acceptance Ins. Co. v. Brown, 832 So.2d 1, 12 (Ala.2001).

III. Analysis

TJF and the plaintiffs raise numerous issues on appeal. First, TJF argues that the trial court exceeded its discretion in granting the plaintiffs’ motion for a new trial because, it says, the plaintiffs waived their opportunity to conduct voir dire on the issue of insurance and there was no evidence regarding insurance by which the jury could have been influenced. TJF argues, alternatively, that the trial court erred in denying TJF’s Rule 50(a) motion for a JML as to the plaintiffs’ claims of negligence, tortious interference with business relations, and breach of contract. Finally, TJF contends that the trial court erred by not granting TJF’s motion to dismiss for lack of personal jurisdiction. The plaintiffs contend in their cross-appeal that the trial court erred in granting TJF’s motion for a JML as to the plaintiffs’ suppression claim. .

A. Motion for a New Trial

TJF argues that the trial .court exceeded its discretion in granting the plaintiffs’ motion for a new trial because, TJF *650 says, the plaintiffs, who complained in the motion of being improperly denied the right to conduct voir dire on the issue of insurance, waived that right by making no request or attempt to question the venire on the issue of insurance. It is undisputed that the plaintiffs did not seek to conduct voir dire on the issue of insurance; the record on appeal clearly establishes that fact. See R. 1768 (Plaintiffs’ counsel stating: “Well, Judge, I did not raise it [the issue of insurance] in venire. I’ll be perfectly candid. I did not raise it in veni-re.”). We agree with TJF.
The facts surrounding whether TJF disclosed the existence of insurance to the trial court are not entirely clear. For all that appears, the trial court summoned counsel for both sides to the bench for an off-the-record sidebar during voir dire; there is no transcript of the sidebar. According to the parties, during the sidebar, the trial court asked one of two things: “Is there insurance in this case?” or “Is there insurance coverage in this case?”[4] In response to the trial court’s question, TJF’s counsel answered in the negative. Curiously, the plaintiffs’ counsel remained silent after TJF’s counsel’s response, despite the fact that it is undisputed that plaintiffs’ counsel was, at that very moment, in physical possession of TJF’s insurance policy, which had been obtained during discovery, and that the insurance policy was listed on both sides’ respective exhibit lists. In any event, the trial court, based on TJF’s representation that there existed either no insurance or no insurance coverage in this case, determined that there would be no voir dire on the issue of insurance; the plaintiffs did not object to the trial court’s decision at that time or at any time during trial. It is undisputed that the plaintiffs did not complain of the lack of voir dire on the issue of insurance until they filed their motion for a new trial, which sought a new trial based solely on that one allegation of error on the part of the trial court.
By failing to timely object to the trial court’s decision to forgo voir dire on the issue of insurance, the plaintiffs waived that issue both in the trial court and at the appellate level. It is well settled that “[w]hen a party fails to use reasonable diligence in questioning potential jurors, that party waives any right to later challenge the jury on a motion for new trial” Volkswagen of America, Inc. v. Marinelli, 628 So.2d 378, 389 (Ala.1993) (citing Aaron v. State, 273 Ala. 337, 139 So.2d 309 (1961), cert. denied, 371 U.S. 846, 83 S.Ct. 81, 9 L.Ed.2d 82 (1962) (emphasis added)). See also Holland v. Brandenberg, 627 So.2d 867, 870 (Ala.1993) (“Failure to use due diligence in testing jurors as to qualifications or grounds of challenge is an effective waiver of grounds of challenge; a [party] cannot sit back and invite error based on a juror’s disqualification.” (citing Beasley v. State, 337 So.2d 80 (Ala.Crim.App.1976)) (emphasis added)); and Gwin v. Church, 272 Ala. 674, 680, 133 So.2d 880, 887 (1961) (noting the well settled rule that a party is entitled “to have the jurors qualified as to their relation to, or interest, in any insurance company which would be liable, in whole or in part, for any judgment that might be rendered against the defendant” but only upon the filing of a *651 “seasonable [5] and proper motion” (citing numerous authorities) (emphasis added)).
The plaintiffs, by failing to exercise “due diligence” in raising the issue of their right to conduct voir dire on the issue of insurance and thereby failing to raise the issue in a “seasonable” manner — i.e., by waiting until an adverse judgment had been entered against them and then raising the issue for the first time in their motion for a new trial — waived their opportunity to present an objection as to this issue. See Volkswagen, supra; Holland, supra; and Gwin, supra. Furthermore, “a party ‘cannot by his own voluntary conduct invite error and then seek to profit thereby.”’ Mississippi Valley Title Ins. Co. v. Hooper, 707 So.2d 209, 213 n. 5 (Ala.1997) (citing Slaton v. State, 680 So.2d 879, 892 (Ala.Crim.App.1995), and Phillips v. State, 527 So.2d 154 (Ala.1988)). The plaintiffs, by making no objection or not requesting the opportunity to conduct voir dire on the issue of insurance after TJF allegedly falsely informed the trial court that it had either no insurance or no insurance coverage in this matter, clearly invited the error of which they now complain; this Court will not provide relief to a party who, by his or her own conduct, created the error for which he or she seeks redress. See Mississippi Valley Title Ins. Co., supra. Thus, the trial court exceeded its discretion in granting the plaintiffs’ motion for a new trial, and that order is due to be reversed.
Because we hold that the judgment on the jury verdict in favor of TJF is due to be reinstated, we pretermit discussion of TJF’s additional grounds for appellate review.[6] Instead, we now 'turn to the plaintiffs’ cross-appeal.

B. The Plaintiffs' Cross-Appeal

The plaintiffs contend that the trial court erroneously granted TJF’s motion for a JML insofar as it dismissed the plaintiffs’ suppression claim. The plaintiffs’ suppression claim is fairly straightforward: They argue that TJF “never disclosed the restoration or finishing work” it had performed on the filing press and the dressing table (thus suppressing a material fact) and that, as a result of TJF’s alleged suppression of that material fact, the plaintiffs “were deprived of the opportunity to seek advice from any furniture conservation or appraisal experts.” The plaintiffs’ brief, at 69. We agree with TJF, however, that the suppression claim is barred by the 20-year rule of repose and thus was properly dismissed.
In Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala.2002), this Court presented a detailed explanation of Alabama’s 20-year rule of repose, stating, in pertinent part:
“Since 1858, causes of action asserted in Alabama courts more than 20 years after they could have been asserted have been considered to have been extinguished by the rule of repose. See Rector v. Better Houses, Inc., 820 So.2d 75, 77 n. 2 (Ala.2001) (‘Since this Court decided McArthur v. Carrie’s Administrator, 32 Ala. 75 (1858), Alabama has followed a rule of repose, or rule of prescription, of 20 years,’). The well-established rule recognizes the realities that surround the inverse relationship between the passage of time and the ability to fairly and justly resolve disputes:
*652 “ ‘As a matter of public policy, and for the repose of society, it has long been the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into.... It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years, after they might have [brought an action], and after, as is generally the case, the memory of transactions has faded and parties and witnesses passed away, to [bring an action]. The consensus of opinion in the present day is that such presumption is conclusive, and the period of 20 years, without some distinct act in recognition of the [claimant’s right], a complete bar; and, as said in an early case, “the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, ‘and relieves courts from the necessity of adjudicating rights so obscure by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible.’ ” ’
“Snodgrass v. Snodgrass, 176 Ala. 276, 280-81, 58 So. 201, 201-02 (1912); see also Oxford v. Estes, 229 Ala. 606, 611, 158 So. 534, 538 (1934) (‘Failure of memory, loss of evidence, death of parties, the probability that the whole truth cannot be ascertained and justice done, enter into the equation as a reason for the rule [of repose].’).
“The rule of repose arose within the context of property disputes; however, the rationale underlying the rule is not so limited and, accordingly, the rule has been applied in other contexts, including those alleging tort claims. See Tierce v. Ellis, 624 So.2d 553, 554-55 (Ala.1993) (applying the rule to a paternity, dispute); Ex parte Grubbs, 542 So.2d 927, 930-31 (Ala.1989) (applying the rule in the context of a civil-rights violation claim under 42 U.S.C. § 1983); Barrett v. Wedgeworth, 518 So.2d 1256, 1257-58 (Ala.1987) (applying the rule to bar a claim that a divorce judgment had been procured by fraud); Ballenger v. Liberty Nat’l Life Ins. Co., 271 Ala. 318, 322, 123 So.2d 166, 169 (1960) (holding that a conversion claim was barred by the rule of repose, and stating that ‘[t]he rule has been applied to various situations but always consistently and unvariably’); see also Moore v. Liberty Nat’l Ins. Co., 108 F.Supp.2d 1266, 1274-75 (N.D.Ala.2000) (applying Alabama’s rule of repose to bar claims virtually identical to the claims asserted in this case), aff'd, 267 F.3d 1209 (11th Cir.2001).
“While the rule [of repose] is similar to a statute of limitations, the rule of repose is not ‘dependent upon a statute and is broader in scope than a statute of limitations.’ Rector, 820 So.2d at 77 n. 2. The rule of repose is broader in scope than a statute of limitation in at least two ways.
“First, the rule is based solely upon the passage of time, see Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982) (‘\T]he only element of the rule of repose is time. It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured.’) (emphasis added), and is not based upon concepts of accru *653 al, notice, or discovery — concepts that are applicable to statutes of limitation. See Baugher v. Beaver Constr. Co., 791 So.2d 932, 934 n. 1 (Ala.2000) (noting that because the limitations period set forth in Ala.Code § 6-5-221 (a) — applicable to certain actions brought against architects, contractors, and engineers— begins to run ‘upon the substantial completion of the improvements, rather than upon the injury to the plaintiff’s person or property or upon the accrual of the plaintiff’s cause of action otherwise,’ the statute is a statute of repose rather than a simple statute of limitations.) (emphasis added); see Ballenger, supra, 271 Ala. at 322, 123 So.2d at 169 (stating that ‘[l]ack of notice is not sufficient to avert the application of the doctrine’ of repose); Merrill v. Merrill, 260 Ala. 408, 411, 71 So.2d 44, 45-46 (1954) (noting that ‘absence of notice’ does not control the application of the rule, and that ‘[n]otice does have influence on the question of laches, but not on [repose]’); see generally 54 C.J.S. Limitations of Actions § 4 (1987) 0A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action; 'the injury need not have occurred, much less have been discovered.’). Instead, the ‘rule is couched in terms of the “running of the period against claims,” “absolute bar to unas-serted claims,” “lack of diligence in asserting rights,” “sleeping upon their rights,” etc.’ and is accordingly based upon ‘the pre-existing right to assert a claim.’ Boshell, 418 So.2d at 92. Therefore, the 20-year period begins to run against claims the first time those claims could have been asserted, regardless of the claimant’s notice of a claim. See Moore, supra, 108 F.Supp.2d at 1275 (‘Application of the rule of repose has only one element — the passage of twenty years time from the moment that the actions giving rise to the claim occurred — and, if that time has elapsed, no claim can be pursued.’).
“Second, the rule is broader than a statute of limitation in that ‘[w]hile a statute of limitations generally is procedural and extinguishes the remedy rather than the right, ... repose is substantive and extinguishes both the remedy and the actual action.’ 51 Am.Jur.2d Limitation of Actions § 32 (2000); see Boshell, supra, 418 So.2d at 92; Oxford, supra, 229 Ala. at 611, 158 So. at 538 (‘It is not a presumption merely, but a rule of law, raising an absolute bar to ancient causes of action.’); Green v. Dixon, 727 So.2d 781, 784 (Ala.1998) (‘ “statutes of limitations affect the remedy” ’) (quoting Odom v. Averett, 248 Ala. 289, 291, 27 So.2d 479, 480 (1946)); Jefferson County Sav. Bank v. Ben F. Barbour Plumbing & Elec. Co., 191 Ala. 238, 247, 68 So. 43, 46 (1915) (‘Statutes of limitation go to the remedy, not the rights of parties.’); Moore, supra, 108 F.Supp.2d at 1275 (‘While a statute of limitations is a procedural device that sets forth the time period within which an action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is substantive doctrine of the State, eliminating a cause of action, irrespective of its date of accrual.’).”
825 So.2d at 763-65 (footnotes omitted; some emphasis added).
The plaintiffs state that the first conservation work on the filing press and dressing table occurred, respectively, in 1983 and 1984; TJF states that it actually performed conservation work on the dressing table several years prior to 1984 and that that work was completed in either 1977 or 1978. TJF also states, in similar fashion to the plaintiffs, that it performed conservation work on the furniture in 1983 and *654 1984. Thus, under Alabama’s rule of repose (as explained in the quotation above from Ex parte Liberty National), the claim expired no later than 2004 — 20 years after the repair of the dressing table in 1984 and the restoration of the filing press in 1983. The plaintiffs’ assertion that they only recently discovered the alleged suppression does not toll the application of the 20-year rule of repose. Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101, 129 (Ala.2003) (Johnstone, J., concurring in part, concurring specially in part, and dissenting in part) (“[T]he plaintiffs lack of discovery or notice of the existence of the claim does not prevent the running of the 20-year period of the rule of repose.”). Accordingly, the trial court correctly granted TJF’s motion for a JML as to the plaintiffs’ suppression claim.

TV. Conclusion

We reverse the trial court’s order granting the plaintiffs’ motion for a new trial, and we remand the cause to the trial court to reinstate the original judgment entered on the jury’s verdict for TJF. As to the plaintiffs’ cross-appeal, the judgment of the trial court is affirmed.
1140528 — REVERSED AND REMANDED WITH DIRECTIONS.
MOORE, C.J., and BOLIN and BRYAN, JJ., concur.
MURDOCK, J., concurs in the judgment of reversal and remand.
1140586 — AFFIRMED.
BOLIN, J., concurs.
MOORE, C.J., and MURDOCK and BRYAN, JJ., concur in the result.

. Rule 50(a), Ala. R. Civ. P., provides:
“(a) Judgment as a matter of law.
“(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
“(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.”

. Emma died in 2013.

. It is undisputed that, at all times relevant to this case, the filing press and dressing table were jointly owned by Emma and her children, James and Sara, although it is not clear how James and Sara acquired their interests. However, ownership of the filing press and dressing table is not an issue on appeal.

. None of the parties remembers the exact wording of the question. Presumably, the distinction the parties are attempting to make between the two questions is that the first question (whether there exists insurance in this case) would show only the ownership of , one or more insurance policies by TJF, whereas the second question (whether there exists insurance coverage in this case) would show whether any potential monetary judgment against TJF in this case would actually be covered, i.e., paid, by one or more of its insurers.

. “Seasonable" is defined, in pertinent part, as "within a reasonable time.” Black’s Law Dictionary 1554 (10th ed.2014).

. Because we do not reach the JML and personal-jurisdiction issues, we also do not address the plaintiffs’ argument concerning our appellate jurisdiction to consider those issues.