LEAR, Judge.
The joint petition of Mrs. Lila L. Jones and her husband, Charles L. Jones, was filed in the Twenty-Seventh Judicial District Court against Pierre J. Gomer and his liability insurer, Employers Liability Assurance Corporation, Ltd. In that petition Mr. Charles L. Jones appeared individually and as administrator of the estate of the minor child of the marriage, Allen L. Jones, age 17.
At the time of the accident and filing of the petition, the minor was residing with his parents. The petition alleges that on or about August 23, 1965, at approximately 8:20 o’clock p. m. the mother, Mrs. Lila L. Jones, was a passenger in a 1963 Studebaker Avanti automobile belonging to Charles L. Jones, being driven by Allen L. Jones on U. S. Highway 167 between Opel-ousas and Lafayette, Louisiana.
The petition prayed for a judgment in favor of Charles L. Jones, individually, for property damage and medical expenses incurred by him as a result of the injuries suffered by his wife and son. It prayed for judgment in his favor for the use and benefit of the minor for personal injuries sustained by the latter. It further prayed for judgment individually in favor of the mother for damages resulting from personal injuries.
Pierre J. Gomer and his liability insurer and co-defendant filed an answer admitting their insured-insuror relationship, but entered what is tantamount to a general denial to the other allegations of the petition.
The answer then pleaded what was said to be the negligence of Allen L. Jones and his mother, asserting such negligence to be the sole and proximate cause of the accident. Further answering in the alternative, the asserted negligence of Allen and his mother was categorized as contributory negligence barring recovery by them and specifically pleaded in defense the doctrines of last clear chance and discovered peril.
Further answering in the alternative, the defendants alleged that if plaintiffs were entitled to recover, because of any negligence on the part of Pierre Gomer, which was denied, then Employers Liability Assurance Corporation, Ltd., and Pierre J. Gomer were entitled to judgment over against Charles L. Jones, Allen L. Jones and their liability insurer, Aetna Casualty and Surety Company, for the full amount of any damages awarded to plaintiffs, or again alternatively, for contribution in the proportionate amount of their respective liabilities for damages attributable to acts of negligence of the minor, Allen L. Jones, and his mother, Lila L. Jones.
Then assuming the position of plaintiff in reconvention, Mr. Gomer alleges that the sole and proximate cause of the accident was the joint negligence of Allen and his mother. The reconventional demand then pleads the doctrine of last clear chance as against these two persons and sets forth that if Allen was found to be responsible because of a breach of care established by that doctrine, then Charles L. Jones is vicariously liable for his son’s negligence by virtue of La.C.C. Art. 2318 and also under the doctrine of respondeat superior. *385 The reconventional demand then sets forth certain property damages and personal injuries suffered by Mr. Gomer. It concludes by asserting that Mr. Gomer should recover a monetary judgment in the amounts set forth from Charles L. Jones, Mrs. Lila L. Jones, Allen L. Jones and Aetna Casualty and Surety Company.
After issue joined, Mr. and Mrs. Jones and the defendants filed a joint motion alleging the compromise and settlement of the original claims and asking that the original petition be dismissed, which judgment was entered on the 18th day of October, 1966. The third party demand was then tried in district court, resulting in judgment in favor of third party defendants. Pierre J. Gomer, third party plaintiff and plaintiff in reconvention, perfected his appeal to this court.
The facts show that U. S. Highway 167 is a four-lane highway running generally north and south between the City of Opel-ousas and the City of Lafayette, Louisiana. During its course, the southbound lanes are separated from the northbound lanes by a neutral ground. The area of separation varies, but the evidence shows that at the point of the accident out of which this litigation grows, the neutral ground was between 50 and 60 feet wide. Louisiana Highway 182 is a two-lane traffic artery running generally east-west and forming an intersection with U. S. 167, which was the site of this accident. Persons traveling north on U. S. 167 and desiring to go to Sunset, Louisiana, which lies fo the west, must of necessity turn left from 167 onto Louisiana 182. In order to obviate the necessity of a sharp left turn from U. S. 167 onto Louisiana 182, the highway authorities have built a left turn auxiliary onto which northbound traffic can exit from the inside travel lane of U. S. 167 in a diagonal, northwesterly direction to approach Louisiana 182 at a point on its south line between the northbound lanes and the southbound lanes of U. S. 167. An automobile leaving the inside lane of U. S. 167 on this diagonal finds himself confronted with a yield sign which governs his activities before he proceeds into Louisiana 182. If the way is clear, he proceeds into Louisiana 182, making a rather sharp, short left turn and is immediately confronted with the eastern side of the southbound lanes of U. S. 167. At that point on the northeast corner of the intersection there is a stop sign requiring westbound traffic on 182 to come to a stop before it proceeds into and across U. S. 167. In addition thereto there is a blinking light over the center of the intersection. This blinking light blinks red for traffic on Louisiana 182 and blinks yellow, or caution, for southbound traffic on U. S. 167. The evidence establishes the speed limit on U. S. 167 to be 70 miles per hour.
On the date and at the time mentioned, young Allen Jones was driving his family’s Studebaker Avanti, a sports type model, south on U. S. 167. Accompanying him in the front seat was his mother, Mrs. Lila L. Jones. Mr. Pierre J. Gomer was operating a pickup truck north on U. S. 167, desiring to go to Sunset, Louisiana, which lay to his left, or west of the intersection. In order to effectuate this maneuver, Mr. Gomer left U. S. 167 in the diagonal direction described above, proceeded along the auxiliary left turn lane established for that purpose and, by his testimony, came to a complete stop when he approached the intersection of the auxiliary road with Louisiana 182. He testified he then pulled into Louisiana 182, making the rather sharp left-hand turn also described above, and again came to a complete stop before entering U. S. 167 for the purpose of traversing it to proceed on his way to Sunset, Louisiana. He testified he saw the lights of the oncoming Studebaker automobile. Later in his testimony he explained that he did not mean “lights” in the plural, but that he meant he saw the light of an oncoming car and then stated he was sure the Studebaker automobile only had one headlight burning. *386 Be that as it may, after coming to a stop, Mr. Gomer considered that he could successfully traverse U. S. 167 in front of the oncoming Studebaker. He put his truck into forward motion. When the front of his truck reached a point about three feet into the inside lane of the two southbound lanes of U. S. 167, he realized that he could not successfully traverse the highway and thereupon immediately brought his truck to another full, complete stop. He testifies that he was in this position when the Studebaker automobile hit the right front side of his truck, spinning it around in the highway and throwing him bodily therefrom.
Young Jones testified that he was driving the Studebaker in the outside lane of the southbound lanes of U. S. 167 and was driving at a fairly constant speed of 70 miles per hour, with the exception of several prior aberrations against which he had been warned by his mother. He further testified that approaching intersections such as the one in question he would take his foot from the accelerator of his Studebaker sports car and it, having an engine of very high compression, would immediately begin slowing down and would slow to a speed of between 60 and 65 miles per hour before he would enter the intersection. He testified that this not only happened at the intersection in question, but also happened at what was referred to on the trial as the Grand Coteau intersection, approximately one-half mile north of the scene of the accident.
Young Jones stated that as he approached the Sunset intersection, he saw the lights of Mr. Gomer’s truck as it was coming toward him in the neutral ground area and that he could see that the truck was moving at a very slow rate of speed. From the testimony, it is obvious that at this point young Jones noticed the oncoming lights at a time when Mr. Gomer was driving down the auxiliary left turn roadway proceeding into Louisiana 182. He said that he continued on his route and the next thing he realized there was a glare of lights to his left and then the impact. As he said, “It happened just at the snap of the fingers”. He did not see Mr. Gomer bring his truck to a stop at any time. He assumed that Mr. Gomer was going to stop since he, Allen Jones, had the right of way. He stated that he did not know where in the intersection the impact occurred, but he was steadfast in his testimony to the effect that he was in the right, or outside lane of the southbound lanes of traffic of U. S. 167. Though Mr. Gomer testified that only one headlight of the Studebaker was burning, young Allen Jones testified that he had been driving for two or more years, that he often drove the family Studebaker and was familiar with it, and that he knew that both headlights were burning and functioning properly because of the illumination they cast upon the roadway in front of him.
His mother testified that when riding with her son she inevitably required him to obey the speed limit and that he always traveled the right, or outside lane unless he was passing other vehicles. She testified positively and without contradiction that he was traveling the outside lane of. travel at the time the accident happened.
Both drivers were familiar with the lay-out, courses, directions and physical characteristics of the roadways and intersection with which we are concerned. This factor, we think, though it may not relate to the degree of care, has a direct bearing upon the exercise of that care.
It must be remembered that the claims of the plaintiffs Jones had been settled. Thus, the legal problem was not the negligence of Gomer, considered in the light of the contributory negligence of Jones. It had shifted so that the consideration became the negligence of Jones, the contributory negligence of Gomer, then to the last clear chance of Jones, which might have insulated any contributory negligence on the part of Gomer.
*387 The trial court did not decide whether Allen Jones was negligent or not. For the purpose of his decision he assumed such negligence. Then passing to the contributory negligence of Mr. Gomer, he found, and correctly so, that Mr. Gomer’s knowledge of the physical lay-out of the intersection, his knowledge of the presence of an oncoming car on a superior, high-speed highway and his entry into U. S. 167 despite this knowledge, was proximate negligence. We concur.
 It then became necessary for the court to consider the doctrine of last clear chance. It did so as follows:
“In order for that doctrine to apply there certainly must be three elements which the plaintiff in reconvention here bears the burden of proving and which the Court feels that he has not borne. First, that the plaintiff was in a position of peril of which he was unaware or from which he was unable to extricate himself ; second, that the defendant was in a position to discover plaintiff’s peril and had failed to do so; and that when the defendant discovered plaintiff’s peril he had a reasonable opportunity to avoid the accident. It is particularly on this third basis that the Court makes its judgment. The Court does not feel that it has been shown that young Jones had a reasonable opportunity to avoid the accident and does not feel that it has been shown by a preponderance of the evidence that he should have or he did discover the peril of the plaintiff. Further, the doctrine of last clear chance includes in addition to the defendant’s superior knowledge of the plaintiff’s peril the defendant’s ability to avoid the accident which the Court finds again the plaintiff in reconvention has failed to prove.”
For that reason, the judgment of the said Court will be affirmed.
Plaintiff in reconvention to pay all costs.
Affirmed.