TYSON, Judge.
Bennie Steve Poole was charged in a two-count indictment with manslaughter, in violation of § 13A-6-3(a)(l), Code of Alabama 1975. The jury returned a verdict of “guilty as charged” and, following a sentencing hearing, the trial court sentenced Poole to three years’ imprisonment in the penitentiary.
The State’s evidence tended to show that the appellant, Poole, a Morgan County Sheriff’s Deputy, was driving his patrol car along Highway 31 in Decatur on the night of August 15, 1982 and that he entered the intersection of Highway 31 and Highway 67 and collided with a Pontiac automobile that entered the intersection on Highway 67. The driver and one passenger in the Pontiac automobile were killed. There was a traffic light at the intersection and witnesses testified that this light was giving a red signal for traffic on Highway 31. Witnesses testified that the Sheriff’s vehicle was approaching the intersection at a high rate of speed and that the blue lights and siren were on. These witnesses also testified that the Pontiac automobile was traveling at approximately 40 m.p.h. upon approach of the intersection.
Howard Anderson, a passenger in the Pontiac, testified that he, John David Bed-ingfield, and Andrew Anderson, were returning home from a movie the night of August 15, 1982. They were traveling down Highway 67 and as they approached the intersection of Highway 67 and Highway 31 they had the radio on and were discussing the movie they had just watched. Approximately 50 yards from the intersection they heard a siren. Anderson testified that they looked to see where the siren was and were hit by a patrol car in the middle of the intersection. Anderson stated that the driver of the car in which he was a passenger was driving approximately 50 m.p.h. and never applied the brakes.
Further evidence showed that during the daytime hours of August 15, 1982, the small Morgan County town of Falkville lost the service of its three police vehicles. The Falkville Chief of Police had notified the Morgan County Sheriff’s Department of this problem in case an emergency arose, in which situation Falkville would need assistance. During the nighttime hours of August 15, the Falkville Police Chief radioed the Morgan County Sheriff’s Department that an armed robbery had taken place, that one man was injured and that he had one man down. He further stated that two suspects remained at liberty and were thought to be on foot in the general area. *532 Upon hearing this radio traffic, Deputy Poole left the Sheriff’s Department in his vehicle, headed for Falkville. Several other deputies, were already en route to Falkville at the time Poole departed.
Poole testified that, upon leaving the station, he turned on his blue lights and siren. He passed through several red lights and intersections along the way to the intersection of Highway 31 and Highway 67. At one intersection Poole had to slow to a virtual stop because of traffic. From this point Poole accelerated rapidly, reaching a speed of approximately 70 m.p.h. approaching the intersection of 31 and 67. Poole stated that, as he approached the intersection, he could see cars stopped all around and it appeared to him that the traffic was yielding the intersection to his emergency vehicle. Once he entered the intersection, Poole noticed an automobile pulling into the intersection in front of him. He hit the brakes and attempted to swerve left and right. He was unable to do so and collided with this vehicle. John David Bedingfield and Andrew Anderson were pronounced dead at the scene of the accident.
I
The appellant argues that the trial court erred in failing to grant his motion for judgment of acquittal based on insufficiency of the evidence. Poole was indicted for the crime of manslaughter. Section 13A-6-3(a)(l) provides that “[a] person commits the crime of manslaughter if: [h]e recklessly causes the death of another person .... ” A correct determination of the contention raised by appellant hinges in part on whether he acted “recklessly” as charged in the indictment and as the word “recklessly” is defined by § 13A-2-2(3), Code of Alabama 1975. Section 13A-2-2(3) reads as follows:
“RECKLESSLY. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation_”
Included within a charge of manslaughter is the lesser offense of criminally negligent homicide (§ 13A-6-4, Code of Alabama 1975). This court has set out the differences involved when deciding sufficiency of the evidence claim in such a case as manslaughter as follows:
“By statutory definition a person commits the crime of manslaughter if he recklessly causes the death of another person. Section 13A-6-3(a)(l). The reckless offender is aware of a substantial and unjustifiable risk and ‘consciously disregards’ it. Section 13A-2-2(3); commentary to Section 13A-2-2.
‘A person commits the crime of criminally negligent homicide if he causes the death of another person by criminal negligence.’ Section 13A-6-4. ‘A person acts with criminal negligence ... when he fails to perceive a substantial and unjustifiable risk that the result will occur _’ Section 13A-2-2(4). In both manslaughter and criminally negligent homicide ‘(t)he risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.’ Sections 13A-2-2(3) and (4).
The only difference between manslaughter under Section 13A-6-3(a)(l) and criminally negligent homicide is the difference between recklessness and criminal negligence. ‘The reckless offender is aware of the risk and “consciously disregards” it. On the other hand, the criminally negligent offender is not aware of the risk created (“fails to perceive”) and, therefore, cannot be guilty of consciously disregarding it.’ Commentary to Section 13A-2-2. ‘The difference between the terms “recklessly” and “negligently”, ... is one of kind, rather than degree. Each actor creates a risk of harm. The reckless actor is *533 aware of the risk and disregards it; the negligent actor is not aware of the risk but should have been aware of it.’ C. Torcia, 1 Wharton’s Criminal Law Section 27 (14th ed. 1978) (emphasis in original).
Negligence ‘is distinguished from acting purposefully, knowingly, or recklessly in that it does not involve a state of awareness. It is the case where the actor creates inadvertently a risk of which he ought to be aware, considering its nature and degree, the nature and the purpose of his conduct and the care that would be exercised by a reasonable person in his situation.’ Commentary to Section 13A-6-4.” Phelps v. State, 435 So.2d 158 (Ala.Crim.App.1983).
The case at bar is complicated by the fact that police vehicles are given exempt status from the normal rules of the road in certain situations. Section 32-5A-7, Code of Alabama 1975 provides the following:
“(a) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.
(b) The driver of an authorized emergency vehicle may:

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property; ...
(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of an audible signal meeting the requirements of 32-5-213 and visual requirements of any laws of this state requiring visual signals on emergency vehicles.
(d) The foregoing provisions shall not relieve the driver of any authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.”
This cáse is further complicated by a strong public policy argument. It is argued that, by holding the operators of authorized emergency vehicles criminally liable, we will discourage such operators from proceeding to their destinations with such dispatch as society now enjoys and expects. It is further argued that, as a matter of public policy, the operators of emergency vehicles in emergency situations ought not be placed under strict criminal liability for errors of judgment or simple negligence.
In this cause it is clear to this Court that the appellant failed to operate his emergency vehicle with due regard for the safety of all persons. His failure to sufficiently slow down for the intersection and the resulting collision bares out this determination. It is clear that the appellant’s conduct can readily be judged too harshly and that the jury could have done so by the verdict it rendered. Nevertheless, a review of the record in this cause reveals that the verdict is supported by substantial evidence. Although the appellant argues that the traffic mishap was merely a tragic error in judgment, it is the opinion of this Court that the appellant’s conduct constituted a gross deviation from the standard of care that a reasonable person would observe in the situation. See Heatheock v. State, 415 So.2d 1198 (Ala.Cr.App.1982) and authorities cited above.
II
Appellant contends that two prospective jurors failed to respond to questions asked by defense counsel during the voir dire examination of the jury venire. These two jurors served on appellant’s jury.
During his questioning of the panel of which these jurors were members, the defense counsel asked the following questions: (R. 37-43)
*534 “Have you ever had any problems or conflicts with any law enforcement officer, no matter how small or large they might be, got in a fuss with one about something, I don’t know just the kinds of things I anticipate with that question, but have you ever had any problems?

“Have any of you ever had a relative ... a close friend that was arrested by law enforcement officers in some kind of case?
“Have any of you ever been witnesses for the defense in a criminal trial? That would be the side of the case that I am on in this case, Steve is on. A defense witness?

At some point, defense counsel learned that jurors Betty Johnson and Marty Keith Russell had been involved in prior criminal activity, or that they had prior conflicts with the law. Defense counsel argued at the motion for new trial hearing, and again on this appeal, that because of the prospective jurors’ failure to answer the questions, appellant was unable to utilize his jury strikes effectively, and was, therefore, prejudiced and entitled to a new trial.
At the motion for new trial hearing, the trial judge heard the testimony of the two jurors who had failed to respond to the questions during the voir dire examination. In denying the appellant’s motion he found the following: (R. 398-401)
“The defendant having filed his Motion in the Alternative for a Judgment of Acquittal or New Trial was before this court with his attorney on October 12, 1984 for argument and testimony in support of those motions. The state was represented by the Assistant District At-tornies (sic) of this Circuit. The Motion for Judgment of Acquittal was argued by each party and taken under advisement by the court. After due and careful consideration of this motion, the court is of the opinion that it is due to be overruled. The Motion for Judgment of Acquittal is overruled.
“Evidence and argument was taken in support of the motion for New Trial and taken under advisement by the court. The defendant contends that certain of the members of the venire who were selected as jurors in this case did not answer questions on voir dire and that such failure to give information by them was prejudicial to the defendant. One of the jurors was Betty Johnson and the other was Marty K. Russell.
“The evidence reveals that juror, Betty Johnson, was convicted in the District Court of this county of the offense of sale of prohibited liquor. That conviction was in 1982 and was appealed to this court by that defendant. The case was pending in this court at the time Mrs. Johnson was selected to sit as a juror. The appeal of a case from the District Court to the Circuit Court is for trial de novo. Such an appeal de novo effectively eradicates a judgment of the District Court and such a conviction in the District Court cannot be used or treated as a record of conviction in such instances. The voir dire examination to this juror involving the pending case against her was thus limited to the inquiry by the defendant of whether she had ‘ever had any problems or conflicts with any law enforcement officer no matter how small or large they might be ... have you ever had any problems.’ This juror testified at the Motion for New Trial that she did not respond to this inquiry because she ‘had never had a fuss or conflict with them’, and the court is of the opinion after observing this witness that she did not interpret this inquiry to include an arrest. The evidence further reveals that this juror’s former husband had been convicted on at least two prior occasions for the offense of illegal sale of prohibited liquor. The inquiry on voir dire by the defendant as to whether she had ‘ever had a relative ... or a close friend that was arrested by law enforcement officers in some kind of case’ was not responded to by this juror, and her testimony in this regard was that she, at the time of the voir dire, did not consider *535 him a relative or a close friend having been divorced from him since January, 1984. The court finds that this juror was not disqualified to serve as a juror and finds no evidence in this case that had this information been known that the juror would have been stricken by the defendant. The court finds no evidence in this case that this information affected this juror’s deliberations nor verdict, nor had any tendency to do so.
“Juror, Marty K. Russell, testified at the Motion for New Trial that he had twice been convicted of the offense of issuing worthless checks, both convictions were in the District Court of this county and both convictions were based upon a plea of guilty. This juror did not respond to the court’s inquiry touching his qualifications pertaining to a conviction for a crime involving moral turpitude and the loss of his right to vote. Whether or not a conviction for a crime of issuing a worthless check is such a conviction that would cause a defendant to lose his right to vote is in a state of confusion presently because of a recent Federal Court ruling and an Attorney General’s opinion (dated June 20, 1984). The Alabama Court of Criminal Appeals has held on at least one occasion that such a conviction is a conviction that involves moral turpitude. Irvin v. State [44 Ala.App.101], 203 So.2d 383 [(1967)]. The worthless check statute under which this defendant was convicted requires an intent to defraud. It has historically been held that any offense having an element of intent to defraud is an offense involving moral turpitude. Whether a person loses his right to vote based upon such conviction is of no consequence in determining whether or not the offense involved moral turpitude. The refusal to deny a person his right to vote may be based upon some reason other than the moral turpitude aspect of a case (such as lack of counsel or a federal court ruling). If the conviction is allowed to stand, the conviction involves moral turpitude whether or not the defendant loses his right to vote. The statute involved herein (12-16-60 § 4) disqualifies a juror if that juror has lost his right to vote by conviction for any offense involving moral turpitude. There is no doubt under present Alabama law that this juror has been convicted of an offense involving moral turpitude. However, there is some doubt as to whether or not this defendant has lost his right to vote because of that conviction. There is no evidence in this case that this juror has lost his right to vote and it cannot be said therefore that this juror was disqualified to sit as a juror in this case. Even if this juror were subject to challenge for cause for his conviction of issuing a worthless check, there is no evidence before the court that the defendant herein did not know of the previous conviction of this juror. If the defendant had notice of the disqualification of the juror and did not invoke the action of the court to eliminate such juror, the defendant may not thereafter effectively use such disqualification for the purpose of procurring (sic) a new trial. It must affirmatively appéar that the defendant did not previously know of the ground of objection and had used diligence to discover it, or could have discovered it by the use of reasonable diligence.
“Further, the defendant has failed to establish any prejudice or probable prejudice on the part of this juror which could impair this juror’s deliberations and verdict.
“After due and careful consideration of the Motion for New Trial in this case, the court is of the opinion that the same is due to be overruled. It is so ordered.”
The appellant relies on the cases of Ex parte Ledbetter, 404 So.2d 731 (Ala.1981) and Warrick v. State, 460 So.2d 320 (Ala.Cr.App.1984), wherein the Alabama Supreme Court and this Court held that the trial court erred in not granting a new trial. In these decisions the Supreme Court noted that “on the issue of whether the petitioner was prejudiced by a juror’s failure to respond to a question during voir dire, the test is whether the petitioner might have been, not whether he actually was preju *536 diced.” See Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala.1982) and Ex parte Ledbetter, supra.
The Supreme Court further stated the following in Burroughs, supra:
“The earlier case of Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), did not address the effect of an improper answer or failure to answer questions on voir dire which had they been answered properly would have disclosed a challenge for cause. 286 Ala. at 167, 238 So.2d 330. Rather, Freeman established the standard to which this Court must adhere in reviewing the trial court in those circumstances. Quoting from Freeman:
‘We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant. This appears to be the general rule throughout the country. ...
‘There is broad support for the proposition that the trial court’s application of the probable prejudice test is subject to review only for abuse of discretion. ...
‘This rule comports with logic and common sense. The trial judge heard the questions posed on voir dire and answers thereto. He is in the best position to make findings on the question of probable prejudice after the testimony is developed orally, or by affidavit, on new trial motion. His conclusions are then subject to our review for abuse of discretion.

‘We are mindful of the heavy responsibility placed on the trial court to maintain the statutory right which parties have to a full and truthful disclosure by jurors on voir dire. However, we must also be aware of inadvertent concealment and failure to recollect on the part of prospective jurors.
‘To re-emphasize, we say that we will review the trial court’s ruling on motion for new trial predicated on jurors’ improper answers to (or failure to answer) questions propounded on voir dire only for abuse of discretion in its determination as to probable prejudice.’ [Footnote omitted.]
286 Ala. at 166-167, 238 So.2d 330.” Burroughs, supra at 1351. See also Warrick v. State, 460 So.2d 320 (Ala.Cr.App.1984).
“Though the defendant has a right to have questions answered truthfully to enable him to exercise his discretion wisely in the use of his pre-emptory strikes, Sanders v. Scarvey, 284 Ala. 215, 219, 224 So.2d 247 (1969), in this State the rule is well settled that:
‘the failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror, regardless of the situation or circumstances, does not automatically entitle one to a new trial....’ (Citations omitted.)”
Beauregard v. State, 372 So.2d 37 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala.1979).
We have carefully reviewed the evidence presented at the hearing on the motion for new trial and the trial judge’s order denying the motions. We are of the opinion that in this cause the lack of response did not result in probable prejudice to the appellant. Having reviewed the record we feel it is clear that the trial court did not abuse his discretion in denying the motion for new trial on the grounds set forth by appellant. Smithson v. State, 50 Ala.App. 318, 278 So.2d 766 (1973); Trahan v. State, 450 So.2d 1102 (Ala.Cr.App.1984).
We have reviewed this record and find no errors therein.
This cause is due to be and is hereby, affirmed.
AFFIRMED.
All the Judges concur.