While petitioner, a law enforcement officer, was responding to a call for help, his vehicle collided with another vehicle. Two persons were killed. He was convicted of manslaughter and was sentenced to a term of three years' imprisonment. Petitioner appealed to the Court of Criminal Appeals, which affirmed his conviction and sentence. Poole v. State,497 So.2d 530 (Ala.Crim.App. 1985).
Petitioner asked this Court to grant certiorari to review the decision of the Court of Criminal Appeals on the following grounds:
 "3. Petitioner alleges as grounds for the issuance of the writ the following:
 "(1) The first basis for this petition for the writ is that [the] decision of the Court of Criminal Appeals affects a class of constitutional, state and county officers and was incorrectly determined. The issue is whether such constitutional, state and county officers, when operating emergency vehicles during actual emergencies, should *Page 538 
have the benefit and protection of Section 13A-3-22, Code of Alabama, 1975, which creates an exception to the normal proscriptions of the criminal law where the act is performed by a public servant in the reasonable exercise of his official powers, duties or functions."
"* * *
 "(3) The third basis for this petition for the writ is that the decision of the appellate court is in conflict with prior decisions of the appellate court on the same point of law. In its present decision, the appellate court held: `. . . the failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror, regardless of the situation or circumstances, does not automatically entitle one to a new trial. . . .' (Citations omitted.) Beauregard v. State, 372 So.2d 37 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala. 1979). We have carefully reviewed the evidence presented at the hearing on the motion for new trial and the trial judge's order denying the motions. We are of the opinion that in this cause the lack of response did not result in probable prejudice to the appellant. Having reviewed the record, we feel it is clear that the trial court did not abuse his discretion in denying the motion for new trial on the grounds set forth by appellant. Smithson v. State, 50 Ala. App. 318, 278 So.2d 766 (1973); Trahan v. State, 450 So.2d 1102 (Ala.Crim.App. 1984).
 "In the case of Warrick v. State, 460 So.2d 320
at 325 (Ala.Cr.App. 1984), the appellate court held: `The purpose of voir dire examinations of a venire prior to trial is to discover any interest a potential juror might have in the proceeding about to be tried. . . . When these questions and others are answered falsely, either by vocal assertions or by intentional or indifferent silence, which in many cases is perhaps the most detrimental, an accused is denied his right to challenge for cause and has in fact been deceived into forgoing his right of a peremptory strike.'
 "These statements of the law are in conflict and the issue is which holding should be followed on this principle of law."
This Court granted certiorari to review each of these grounds raised by the petitioner. After considering the briefs and arguments of counsel, we agree with the Court of Criminal Appeals that the trial court did not err in denying petitioner's motion for a judgment of acquittal based on an insufficiency of the evidence. Nevertheless, we find that the judgment must be reversed and the cause remanded for a new trial, because of the Court of Criminal Appeals' error in dealing with the failure of two persons on the venire to make a proper disclosure in response to questions propounded to them by petitioner's counsel at voir dire examination.
 I
We first address petitioner's claim that he was entitled to a judgment of acquittal. In addition to the arguments which he made in the Court of Criminal Appeals, he states the following in his brief in this Court:
 "The lower appellate court, in affirming Poole's conviction, failed to consider the application of Section 13A-3-22, Code of Alabama (1975), to the facts of this case. That statute reads as follows:
"`Section 13A-3-22, execution of public duty.
 "`Unless inconsistent with other provisions of this article, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is required or authorized by law or by a judicial decree or is performed by a public servant in the reasonable exercise of his official powers, duties or functions. . . .' [Emphasis added by petitioner.]
 "As the legislature in its wisdom has recognized, public servants involved in the reasonable exercise of their official powers, duties or functions are not held *Page 539 
to the same standard of criminal liability as private citizens. The above statute creates an exception from the normal operation of the manslaughter law which both the . . . trial court and the lower appellate court failed to consider in their decisions. This Court should grant defendant's petition for the writ, allow full briefing and argument thereon and address the failure of both lower courts to grant defendant Poole the benefit of such exemption."
We have permitted the parties to brief in this Court the application of Code 1975, § 13A-3-22, and, although the Court of Criminal Appeals did not make specific reference to the statute in its opinion, we are of the opinion that it is implicit in its opinion that the Court of Criminal Appeals considered the legal effect of § 13A-3-22 and considered that it was inapplicable under the facts of the instant case, because the Court of Criminal Appeals concluded:
 "This case is further complicated by a strong public policy argument. It is argued that, by holding the operators of authorized emergency vehicles criminally liable, we will discourage such operators from proceeding to their destinations with such dispatch as society now enjoys and expects. It is further argued that, as a matter of public policy, the operators of emergency vehicles in emergency situations ought not be placed under strict criminal liability for errors of judgment or simple negligence.
 "In this cause it is clear to this Court that the appellant failed to operate his emergency vehicle with due regard for the safety of all persons. His failure to sufficiently slow down for the intersection and the resulting collision bear out this determination. It is clear that the appellant's conduct can readily be judged too harshly and that the jury could have done so by the verdict it rendered. Nevertheless, a review of the record in this cause reveals that the verdict is supported by substantial evidence. Although the appellant argues that the traffic mishap was merely a tragic error in judgment, it is the opinion of this Court that the appellant's conduct constituted a gross deviation
from the standard of care that a reasonable person would observe in the situation. See Heathcock v. State, 415 So.2d 1198 (Ala.Cr.App. 1982), and authorities cited above."
After reviewing the applicable law as set out in the opinion of the Court of Criminal Appeals, and under the facts of thiscase, we are of the opinion that the Court of Criminal Appeals did not err in holding that the petitioner was not entitled to a judgment of acquittal, because we are of the opinion that a jury question was presented as to whether the petitioner was acting in the "reasonable exercise of his official powers, duties or functions." (Emphasis added.)
 II
We now address petitioner's second argument, that is, that the Court of Criminal Appeals erred in failing to find that the service on the jury by two persons who had failed to respond to voir dire questions was prejudicial to him.
We set out extensively that portion of the opinion of the Court of Criminal Appeals which deals with this legal issue:
 "Appellant contends that two prospective jurors failed to respond to questions asked by defense counsel during the voir dire examination of the jury venire. These two jurors served on appellant's jury.
 "During his questioning of the panel of which these jurors were members, the defense counsel asked the following questions:
 "`Have you ever had any problems or conflicts with any law enforcement officer, no matter how small or large they might be, got in a fuss with one about something, I don't know just the kinds of things I anticipate with that question, but have you ever had any problems?
"`. . . . *Page 540 
 "`Have any of you ever had a relative . . . a close friend that was arrested by law enforcement officers in some kind of case?
 "`Have any of you ever been witnesses for the defense in a criminal trial? That would be the side of the case that I am on in this case, Steve is on. A defense witness?
"`. . . .
 "At some point, defense counsel learned that jurors Betty Johnson and Marty Keith Russell had been involved in prior criminal activity, or that they had prior conflicts with the law. Defense counsel argued at the motion for new trial hearing, and again on this appeal, that because of the prospective jurors' failure to answer the questions, appellant was unable to utilize his jury strikes effectively, and was, therefore, prejudiced and entitled to a new trial.
 "At the motion for new trial hearing, the trial judge heard the testimony of the two jurors who had failed to respond to the questions during the voir dire examination. In denying the appellant's motion he found the following:
 "`The defendant having filed his Motion in the Alternative for a Judgment of Acquittal or New Trial was before this court with his attorney on October 12, 1984, for argument and testimony in support of those motions. The state was represented by the Assistant District Attorneys of this Circuit. The Motion for Judgment of Acquittal was argued by each party and taken under advisement by the court. After due and careful consideration of this motion, the court is of the opinion that it is due to be overruled. The Motion for Judgment of Acquittal is overruled.
 "`Evidence and argument was taken in support of the motion for New Trial and taken under advisement by the court. The defendant contends that certain of the members of the venire who were selected as jurors in this case did not answer questions on voir dire and that such failure to give information by them was prejudicial to the defendant. One of the jurors was Betty Johnson and the other was Marty K. Russell.
 "`The evidence reveals that juror, Betty Johnson, was convicted in the District Court of this county of the offense of sale of prohibited liquor. That conviction was in 1982 and was appealed to this court by that defendant. The case was pending in this court at the time Mrs. Johnson was selected to sit as a juror. The appeal of a case from the District Court to the Circuit Court is for trial de novo. Such an appeal de novo effectively eradicates a judgment of the District Court and such a conviction in the District court cannot be used or treated as a record of conviction in such instances. The voir dire examination to this juror involving the pending case against her was thus limited to the inquiry by the defendant of whether she had "ever had any problems or conflicts with any law enforcement officer no matter how small or large they might be . . . have you ever had any problems?" This juror testified at the Motion for New Trial that she did not respond to this inquiry because she "had never had a fuss or conflict with them," and the court is of the opinion after observing this witness that she did not interpret this inquiry to include an arrest. The evidence further reveals that this juror's former husband had been convicted on at least two prior occasions for the offense of illegal sale of prohibited liquor. The inquiry on voir dire by the defendant as to whether she had "ever had a relative . . . or a close friend that was arrested by law enforcement officers in some kind of case" was not responded to by this juror, and her testimony in this regard was that she, at the time of the voir dire, did not consider him a relative or a close friend having been divorced from him since January, 1984. The court finds that this juror was not disqualified to serve as a juror and *Page 541 
finds no evidence in this case that had this information been known that the juror would have been stricken by the defendant. The court finds no evidence in this case that this information affected this juror's deliberations nor verdict, nor had any tendency to do so.
 "`Juror, Marty K. Russell, testified at the Motion for New Trial that he had twice been convicted of the offense of issuing worthless checks, both convictions were in the District Court of this county and both convictions were based upon a plea of guilty. This juror did not respond to the court's inquiry touching his qualifications pertaining to a conviction for a crime involving moral turpitude and the loss of his right to vote. Whether or not a conviction for a crime of issuing a worthless check is such a conviction that would cause a defendant to lose his right to vote is in a state of confusion presently because of a recent Federal Court ruling and an Attorney General's opinion (dated June 20, 1984). The Alabama [Court of Appeals] has held on at least one occasion that such a conviction is a conviction that involves moral turpitude. Irvin v. State, [44 Ala. App. 101] 203 So.2d 383 [283]. The worthless check statute under which this defendant was convicted requires an intent to defraud. It has historically been held that any offense having an element of intent to defraud is an offense involving moral turpitude. Whether a person loses his right to vote based upon such conviction is of no consequence in determining whether or not the offense involved moral turpitude. The refusal to deny a person his right to vote may be based upon some reason other than the moral turpitude aspect of a case such as lack of counsel or a federal court ruling. If the conviction is allowed to stand, the conviction involves moral turpitude whether or not the defendant loses his right to vote. The statute involved herein [§ 12-16-60 (a)(4)] disqualifies a juror if that juror has lost his right to vote by conviction for any offense involving moral turpitude. There is no doubt under present Alabama law that this juror has been convicted of an offense involving moral turpitude. However, there is some doubt as to whether or not this defendant has lost his right to vote because of that conviction. There is no evidence in this case that this juror has lost his right to vote and it cannot be said therefore that this juror was disqualified to sit as a juror in this case. Even if this juror were subject to challenge for cause for his conviction of issuing a worthless check, there is no evidence before the court that the defendant herein did not know of the previous conviction of this juror. If the defendant had notice of the disqualification of the juror and did not invoke the action of the court to eliminate such juror, the defendant may not thereafter effectively use such disqualification for the purpose of procuring a new trial. It must affirmatively appear that the defendant did not previously know of the ground of objection and had used diligence to discover it, or could [not] have discovered it by the use of reasonable diligence.
 "`Further, the defendant has failed to establish any prejudice or probable prejudice on the part of this juror which could impair this juror's deliberations and verdict.
 "`After due and careful consideration of the Motion for New Trial in this case, the court is of the opinion that the same is due to be overruled. It is so ordered.'
 "The appellant relies on the cases of Ex parte Ledbetter, 404 So.2d 731 (Ala. 1981), and Warrick v. State, 460 So.2d 320 (Ala.Cr.App. 1984), wherein the Alabama Supreme Court and this Court held that the trial court erred in not granting a new trial. In these decisions the Supreme Court noted that`on the issue of whether the petitioner was prejudiced by a juror's failure to respond to a question *Page 542 
during voir dire, the test is whether the petitioner might have been, not whether he actually was prejudiced.' See Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala. 1982), and Ex parte Ledbetter, supra."
We agree with the petitioner that the failure of these two jurors to respond to the questions set out in the opinion constituted prejudicial error, and we find that the Court of Criminal Appeals failed to follow the principles of law set out in this Court's case of Ex parte Ledbetter, 404 So.2d 731 (Ala. 1981). In that case, this Court granted certiorari and held that a juror's failure to disclose an incident during which gunshots were fired at his home five months prior to trial was prejudicial.
At the time of the voir dire examination in the present case, the prospective jurors were questioned whether they had "ever had any problems or conflicts with any law enforcement officer." Those questions should have elicited a response by both of the jurors.
The State contends that the questions asked in this case were so "vague, ambiguous and incoherent" that a failure to respond to them was not improper and did not result in probable prejudice to the petitioner. Although the questions are not overly specific, they were specific enough, in our opinion, that the jurors should have responded to them, under the doctrine of Ledbetter.
With regard to juror Marty Russell, petitioner raises another point. In his motion for a new trial, petitioner included as a ground of his motion the following:
 "A member of the jury who returned the verdict of guilty against the defendant has been convicted of crimes involving moral turpitude and was not qualified to do jury service under Code of Alabama 1975, § 12-16-60 (4), and failed to truthfully answer questions of the court and defense counsel that would have revealed the juror's lack of qualifications."
As is apparent from the order entered by the trial judge with regard to petitioner's claim, the trial court was of the opinion that juror Russell was under no duty to disclose his prior convictions. The Court of Criminal Appeals agreed. The State contends that the trial court correctly applied the law, and that the Court of Criminal Appeals did not err in affirming petitioner's conviction. The State argues, as the Court of Criminal Appeals held, that juror Russell was not subject to challenge for cause; that even if he was, the petitioner waived his right to challenge him on the ground stated; and that even if defendant did not waive his right to challenge Russell for cause, the petitioner did not show, as he must in order to be entitled to a new trial, that he was prejudiced by the juror's service.
We agree with the State that juror Russell was not disqualified for cause. We need not, therefore, address the State's arguments on the waiver issue.
The statutory scheme in effect at the time of Poole's trial clearly establishes that a disqualification occurs, not for the conviction of an offense involving moral turpitude, but when one's right to vote is lost by conviction for such a crime. Code 1975, § 12-16-60, provides:
 "A prospective juror is qualified to serve on a jury if the juror is generally reputed to be honest and intelligent and is esteemed in the community for integrity, good character and sound judgment and also:
 "(1) Is a citizen of the United States, has been a resident of the country for more than 12 months and is over the age of 19 years;
 "(2) Is able to read, speak, understand and follow instructions given by a judge in the English language;
 "(3) Is capable by reason of physical and mental ability to render satisfactory jury service, and is not afflicted with any permanent disease or physical weakness whereby the juror is unfit to discharge the duties of a juror;
 "(4) Has not lost the right to vote by conviction for any offense involving *Page 543 moral turpitude." (Emphasis added.)
Section 12-16-60 concerns only a prospective juror's initialqualifications that entitle him to have his name "placed in the trial court jury box." Code 1975, § 12-16-60 (b)(1). The purpose of this section is "`to insure at least a reasonable approximation to the requirements that jury venires include all qualified persons, and, hence, represent a cross-section of the community.'" State ex rel. Gregg v. Maples, 286 Ala. 274, 279,239 So.2d 198 (1970) (quoting Mitchell v. Johnson, 250 F. Supp. 117
(N.D.Ala. 1966)). The code section that specifically addresses challenges for cause is § 12-16-150. This statute, however, is merely illustrative, Nettles v. State,435 So.2d 151, 153 (Ala. 1983), and a juror may still be challenged for cause on a ground not specifically enumerated in § 12-16-150
but recognized at common law. Nobis v. State, 401 So.2d 191,197 (Ala.Crim.App.), cert. denied, 401 So.2d 204 (Ala. 1981):
 "Ala. Code § 12-16-150 (1975) provides a statutory list of grounds for which a juror may be challenged for cause by either party. Contained within that list is § 12-16-150 (7), relied upon by appellant, which states that a challenge for cause lies where a juror `has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict.' In addition to the grounds for challenge for cause under § 12-16-150, grounds for challenge for cause under the common law still exist, when not inconsistent with the section. Mullis v. State, 258 Ala. 309, 62 So.2d 451 (1952); Felton v. State, 46 Ala. App. 579, 246 So.2d 467 (1971)." (Emphasis added.)
This Court has recognized that the qualifications of jurors set forth in § 12-16-60 may constitute a ground for a valid challenge for cause under the common law if the juror does not possess those qualifications. Cf. Chrysler Credit Corp. v.McKinney, 456 So.2d 1069 (Ala. 1984) (juror who could not read and write and was partially deaf). Hence, a juror disqualified under § 12-16-60 may properly be challenged for cause; that is, a juror's disqualification under § 12-16-60 may also render him subject to challenge for cause. We do not find here, however, that juror Russell could have been challenged for cause under §12-16-60 (a)(4). In Beasley v. State, 39 Ala. App. 182,96 So.2d 693 (1957), decided prior to our present statutory scheme, the Court held that adultery was a crime involving moral turpitude, and, therefore:
 "A conviction of adultery, though only for a misdemeanor, is both a disqualification [under Code 1940, Title 30, § 21, the predecessor statute of Code 1975, § 12-16-60] and a common law ground for challenge to the principal cause . . . and, therefore, under § 64, it is contemplated that such a prospective petit juror should be weeded out by the trial judge even though by some neglect or design of the jury commission his name should appear on the venire." 39 Ala. App. at 186, 96 So. at 697.
Thus, conviction of a crime of moral turpitude can be a ground for disqualification under § 12-16-60 (a)(4) if a person haslost his right to vote. Under § 12-16-150 (5), it is a good challenge for cause if the juror "has been convicted of afelony." (Emphasis added.)
The trial judge found, and we agree, that conviction of the offense of issuing a worthless check is a crime involving moral turpitude in Alabama, Irvin v. State, 44 Ala. App. 101,203 So.2d 283 (1967); but juror Marty Russell was not due to be automatically struck for cause from this jury venire solely because of his prior conviction, because a juror convicted of an offense less than a felony involving moral turpitude is not subject to a challenge for cause unless he also has lost theright to vote:
 "A prospective juror is qualified to serve on a jury if the juror . . . (4) Has not lost the right to vote by conviction for any offense involving moral turpitude." § 12-16-60 (a)(4). (Emphasis added.) *Page 544 
We agree with the trial judge that the law regarding disfranchisement by reason of conviction of a crime involving moral turpitude was "in a state of confusion," but, as the State contends, there was no evidence before him that juror Marty Russell had been disfranchised because of convictions.
Petitioner's jury was struck, and his trial began, on May 16, 1984. On April 10, 1984, in Underwood v. Hunter, 730 F.2d 614
(11th Cir. 1984), the United States Court of Appeals for the Eleventh Circuit had invalidated "on account of race" a portion of § 182 of the Alabama Constitution (1901). 730 F.2d at 621. Section 182 of the Constitution concerns disfranchisement and provides:
 "The following persons shall be disqualified both from registering, and from voting, namely:
 "All idiots and insane persons; those who shall by reason of conviction of crime be disqualified from voting at the time of the ratification of this Constitution; those who shall be convicted of treason, murder, arson, embezzlement, malfeasance in office, larceny, receiving stolen property, obtaining property or money under false pretenses, perjury, subornation of perjury, robbery, assault with intent to rob, burglary, forgery, bribery, assault and battery on the wife, bigamy, living in adultery, sodomy, incest, rape, miscegenation, crime against nature, or any crime punishable by imprisonment in the penitentiary, or of any infamous crime or crime involving moral turpitude; also, any person who shall be convicted as a vagrant or tramp, or of selling or offering to sell his vote or the vote of another, or of buying or offering to buy the vote of another, or of making or offering to make a false return in any election by the people or in any primary election to procure the nomination or election of any person to any office, or of suborning any witness or registrar to secure the registration of any person as an elector." Ala. Const. of 1901, art. VIII, § 182. (Emphasis added.)
The Court held that "section 182 of the Alabama Constitution of 1901 violates on account of race the Fourteenth Amendment with respect to those convicted of crimes not punishable byimprisonment in the penitentiary." Underwood, supra, at 621. (Emphasis added.) Plaintiffs in Underwood were, inter alia, persons who had been denied the right to vote based on § 182 because of their conviction of a crime involving moral turpitude, specifically, issuing a worthless check. Thus, afterUnderwood, persons in Alabama could no longer be disfranchised merely because they had been convicted of a crime involving moral turpitude, unless the crime was punishable by imprisonment in the penitentiary. The United States Supreme Court affirmed the 11th Circuit's opinion and judgment on April 16, 1985. Hunter v. Underwood, 471 U.S. 222, 105 S.Ct. 1916,85 L.Ed.2d 222 (1985). Because of the principle announced inUnderwood, juror Russell was not disfranchised at the time of petitioner's trial because of his convictions for crimes involving moral turpitude, as would have been the case under prior law.
The predecessor of § 12-16-60 was § 12-16-43, and it provided:
 "The jury commission shall place on the jury roll and in the jury box the names of all citizens of the county who are generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character and sound judgment, but no person must be selected who is under 19 or who is an habitual drunkard or who, being afflicted with a permanent disease or physical weakness, is unfit to discharge the duties of a juror or cannot read English or who has ever been convicted of any offense involving moral turpitude. If a person cannot read English and has all the other qualifications prescribed in this section and is a freeholder or householder, his name may be placed on the jury roll and in the jury box. No person over the age of 65 years shall be required to serve on a jury or to remain on the panel of jurors unless willing to do so." Code 1975, § 12-16-43. *Page 545 
The statute does not mention the right to vote nor does it tiedisqualification by reason of conviction of a crime involvingmoral turpitude to the right to vote.
The first mention of the right to vote in the jury qualification statute appears in § 12-16-60, enacted by the legislature in 1978. Ala. Acts 1978, Act No. 594, § 6 (4). The addition of the "right to vote" language in the statute evidences a legislative intent to restrict the category of persons disqualified from jury service by reason of conviction of a crime involving moral turpitude to only those persons who by reason of such conviction have also been disfranchised.
Previously, "[b]eing an elector or not being an elector [was] irrelevant to a man's being a juror in Alabama," Sanders v.State, 42 Ala. App. 419, 426, 167 So.2d 174, 180 (1964), but the legislature, in enacting Code 1975, § 12-16-60 (a)(4), intended to make disfranchisement a focal, and relevant, consideration in determining a person's qualification for jury duty if, of course, a person's conviction of a crime involving moral turpitude was the cause of the denial of this right to vote.
 III
For the foregoing reasons, we have concluded that the judgment of the Court of Criminal Appeals is due to be reversed, and that this cause must be remanded to that court with directions to order a new trial.
Our opinion today should not be construed as holding that a party may not make inquiry about prior convictions of crimes involving moral turpitude that do not result in a loss of the right to vote. We only hold that convictions of these crimes do not result in disqualifying a juror for cause. As we have already pointed out, the questions propounded to the prospective jurors were specific enough, in our opinion, under the doctrine of Ledbetter, to warrant a response.
REVERSED AND REMANDED WITH DIRECTIONS.
ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
TORBERT, C.J., and HOUSTON, J., concur in the result.
JONES, J., concurs, in part; dissents, in part.