The appellants were indicted on charges of theft of property, in violation of § 13A-8-3, Code of Alabama (1975). The Circuit Court of Mobile County granted the District Attorney's motion to consolidate these cases for purpose of trial. Donald E. Aucoin, Sr., was convicted of theft of property and was sentenced to imprisonment in the state penitentiary for six years. R.L. Harris was convicted of forgery in the second degree as a lesser included offense and was sentenced to three years' imprisonment; one year of his sentence to be served in the county jail, with the balance suspended for two years pending good behavior.
The evidence presented at trial indicates that, with the help of appellant Harris, appellant Aucoin staged an automobile accident in order to defraud an insurance company. Appellant Aucoin collected $1,721.05 from the insurance company for damages that were actually incurred prior to the time that his vehicle was insured.
At trial, appellant Aucoin admitted having perpetrated the fraud. He claimed that *Page 1055 
the fraud was merely a means of gaining the confidence of a man on whom he was conducting an undercover investigation.
 I
The appellants argue that the trial court erred in denying appellant Aucoin's requested charges relating to the defense of public authority. The following transpired after the trial court's oral charge:
 "[Counsel for appellant Aucoin]: Judge, I believe my objections to the Court's charge, I would submit to the Court that the evidence before the Court and before this jury submits — presents and supports the defense of my client operating under "public authority" that he was acting in the line and scope of his duties as a constable —
 "THE COURT: We've already been over that off the record and I told you it was no such defense, but you can go ahead for the record.
 "[Counsel for appellant Aucoin]: All right. Judge, I believe that that is a defense. I believe that our requested charge properly states the law and it was not covered in the Court's oral charge."
While § 13A-3-22, Code of Alabama (1975), provides a valid defense for a public servant in the reasonable exercise of his public duty, the trial judge did not err in refusing to give the instructions, under the evidence presented at trial. According to § 13A-3-22, Code of Alabama (1975):
 "Unless inconsistent with other provisions of this article, or with some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when it is required or authorized by law or by a judicial decree or is performed by a public servant in the reasonable exercise of his official powers, duties or functions." (Emphasis added.)
This statute has no counterpart in former Alabama law and has been cited in only one case. See Ex parte Poole, 497 So.2d 537
(Ala. 1986). The commentary to this section explains that it is meant to cover "other situations, which, while involving the use of force and even death, do not warrant criminal prosecutions." The commentary gives further examples for situations in which a public servant in the course of his official duties is justified in engaging in such conduct when it is required or authorized by law. Some examples include breaking a door to execute a search warrant, possession of illicit narcotics by a police officer who has recently purchased them as evidence against a "pusher," and seizure of illegal game by a game warden. In Ex parte Poole, supra, the Alabama Supreme Court held that a jury question was presented as to whether the appellant was acting in the "reasonable exercise of his official powers, duties or functions," within the meaning of § 13A-3-22, where a law enforcement officer's vehicle collided with another vehicle, killing the driver and one passenger while the officer was responding to a call for help. The commentary also notes that this statute is patterned after New York Penal Law, § 35.05, as amended 1968. New York case law has construed its statute to mean that a defense would never apply to an accusation requiring a particular criminal intent. People v. Mattison, 75 A.D.2d 959, 428 N.Y.S.2d 355
(1980). Theft of property is a specific intent crime. Section13A-8-2, Code of Alabama (1975); Lee v. State,439 So.2d 818 (Ala.Cr.App. 1983). The commentary notes that similar provisions are found in Michigan Revised Criminal Code § 601, which confines its justification for such conduct during the execution of public duty to situations "when it is required or authorized by a provision or law or by a judicial decree"; in Proposed Revision to Texas Penal Code § 9.22, which codified the common-law defense of necessity; and in Oregon Proposed Criminal Code Art IV, § 19 (now § 161.195, Oregon Revised Statutes).
In construing § 13A-3-22, a strict or narrow interpretation is necessary.
 "In numerous cases a strict interpretation has been adopted in regard to statutes which authorize administrative agencies to exercise powers that tend to interfere with established or traditional property rights, freedom of contract, or personal freedom and liberty. . . . The *Page 1056 
standard criteria of statutory construction are controlling for the purpose of determining what administrative powers, rights, privileges and immunities are granted. The history of the statute, contemporary practice and usage, and the meaning given similar legislation by the courts in other jurisdictions may be of value in refuting an asserted power. . . .
 "In keeping with the rule that a constitutional interpretation is preferred, a narrow interpretation of a statute granting powers to an administrative body is often necessary to sustain its validity. And all of the various aids for interpretation, such as, ejusdem generis, expressio unius, in pari materia, titles and preambles, common meanings of language, legislative history, and others are relevant in construing legislation to determine the scope of administrative powers granted to an agency."
Sands, Southerland Statutory Construction, § 65.02 (___ ed. 19__).
The pertinent language in § 13A-3-22 is "in the reasonable exercise of his official powers, duties or functions." Under the facts of the case sub judice, appellant Aucoin's acts were neither "reasonable" nor an exercise of his "official powers, duties or functions." According to § 36-23-6, Code of Alabama
(1975), a constable's duties include:
 "(1) To attend the circuit of the county when summoned by the sheriff for that purpose;
 "(2) To execute and return all summons[es], executions and other process directed to him by any lawful authority;
 "(3) To pay over monies collected by virtue of his office to the person entitled thereto; and
 "(4) To perform such other duties as are or may be required of him by law."
Even if the appellants were working undercover on an investigation of another officer, defrauding an insurance company was not a reasonable means to investigate that officer for drug-related offenses. The insurance company was not informed of the investigation, or what its role in the investigation would be, until the appellants were themselves being investigated. Furthermore, there was no testimony at trial from a higher authority that the appellants' method for investigating the other officer had been previously decided upon or approved. "The trial court may properly refuse a written requested charge which is not applicable to the evidence as presented at trial." Scanland v. State,473 So.2d 1182, 1187 (Ala.Cr.App. 1985), cert. denied, 474 U.S. 1035,106 S.Ct. 602, 88 L.Ed.2d 581 (1985), and cases cited therein. "Moreover, the trial court may within its discretion refuse a charge which is not applicable to the evidence presented at trial even though said charge is arguably a correct statement of law. Taylor v. State, Ala.Cr.App. [1981], 408 So.2d 551, cert. denied, Ala., 408 So.2d 555 (1982)." Rogers v. State,417 So.2d 241, 247-48 (Ala.Cr.App. 1982). The trial court did not abuse its discretion in refusing the appellants' requested charges.
 II RAISED BY APPELLANT AUCOIN
Appellant Aucoin argues that the trial court erred in refusing to charge on bad reputation for truthfulness as the basis for impeaching a witness. Although the appellant failed to make a written request for a jury charge concerning bad reputation, his attorney made the following exception after the jury was instructed to begin deliberations:
 "Then I would except to the Court failing to charge on bad reputation being a basis for impeaching a witness, in that there was evidence of bad reputation on behalf of [the other officer allegedly under investigation] and the Court indicated it would cover the broad areas and that was not covered, and that's all."
The trial court's charge to the jury addressed the law concerning impeachment where a witness has testified falsely, but at no point did the trial court instruct the jury as to the role of bad reputation as it relates to impeachment. However, according to Rule 14, Alabama Temporary Rules of Criminal Procedure: *Page 1057 
 "No party may assign as error the court's failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
(Emphasis added.) Because appellant Aucoin's counsel did not except on this ground until after the jury retired to deliberate, it is waived. He had been given the opportunity to object before the jury retired and, in fact, objected on several grounds before stating that he had no other objections. Therefore, this matter is waived.
 III RAISED BY APPELLANT HARRIS A.
Appellant Harris argues that the trial court erred in charging the jury that forgery in the second degree is a lesser included offense of theft of property in the first degree. The indictment charged that appellant Harris,
 "did, with the intent to promote or assist the commission of the offense of theft in the first degree, aid or abet Donald E. Aucoin, Sr., in committing said offense. Donald E. Aucoin, Sr., did knowingly obtain by deception control over the property of another, to-wit: a draft, numbered 0049805 and dated October 9, 1985, drawn by Quality Insurance Company and payable to the order of Donald E. Aucoin, Sr., U.J. Chevrolet, Iron and Steel Credit Union, of the value of one thousand seven hundred twenty-one and 05/100 ($1,721.05) dollars, the property of Quality Insurance Company, Incorporated, a corporation, with the intent to deprive the owner of said property, said deception being substantially as follows, to-wit: the said Donald E. Aucoin, Sr., represented to Joanne Hand that damage to a motor vehicle owned or possessed by Donald E. Aucoin, Sr., a 1984 Chevrolet Caprice automobile, had occurred while a policy of insurance issued by said Quality Insurance Company on said vehicle was in force and effect. This representation that said Donald E. Aucoin, Sr., well knew to be false, said damage having occurred, in truth and fact, prior to the effective date of said policy. By means of the aforesaid representation; Donald E. Aucoin, Sr., knowingly obtained control over the aforesaid property, the same being a draft issued in payment for said damage pursuant to the terms of said policy of insurance, all in violation of § 13A-8-3
of the Code of Alabama. The said R.L. Harris aided or abetted the commission of this offense by knowingly falsifying an Alabama Uniform Traffic Accident Report, in his capacity as an officer of the Chickasaw, Alabama Police Department, so as to reflect that the aforesaid damage to the vehicle of Donald E. Aucoin, Sr., occurred on July 29, 1985, when the aforesaid policy of insurance was in force and effect. The said R.L. Harris then well knew that the Alabama Uniform Traffic Accident Report would be represented to the said Quality Insurance Company as being a true and correct account of the date and circumstances of the damage to said vehicle, and well knew that said vehicle was uninsured when said damage in fact did occur, and did thereby act with the intent to promote or assist the commission of this offense, all in violation of § 13A-2-23 and § 13A-8-3, of the Code of Alabama."
Whether a crime constitutes a lesser-included offense is to be determined on a case-by-case basis. Updyke v. State,501 So.2d 566, 567-78 (Ala.Cr.App. 1986). According to Ex parteJordan, 486 So.2d 485, 488 (Ala. 1986), the question becomes: "Can all or fewer than all of these facts establishing the commission of [theft of property in the first degree] also establish the commission of [forgery in the second degree]?" Theft of property is committed when one "[k]nowingly obtains by deception control over the property of another, with intent to deprive the owner of his property." § 13A-8-2, Code of Alabama
(1975). Theft of property in the first degree occurs when the property exceeds $1,000 in value *Page 1058 
or, without regard to value, is taken from the person of another. § 13A-8-3, Code of Alabama (1975). Forgery in the second degree is described in § 13A-9-3, Code of Alabama
(1975):
 "(a) A person commits the crime of forgery in the second degree if, with intent to defraud, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:
"(1) . . . .
 "(2) A public record, or an instrument filed or required or authorized by law to be filed in a public office or with a public employee; or
 "(3) A written instrument officially issued or created by a public office, public employees or government agency."
Section 13A-1-9(a)(1), Code of Alabama (1975), provides that an appellant may be convicted of an offense included in an offense charged, and forging the accident report is an included offense, if it is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged, which is theft of property in the first degree.
The forgery of the accident report in the case sub judice can be established by the same facts as the charged offense of theft of property in the first degree. See Ex parte Oliver,518 So.2d 705 (Ala. 1987) (wherein the Alabama Supreme Court found that under the facts of that case issuing a worthless check was a lesser included offense of theft by deception). The facts established at trial were that Sergeant Harris, with intent to defraud the insurance company, falsely completed an accident report so that insurance proceeds in excess of $1,000 could be knowingly obtained by this deception and with intent to deprive the insurance company of the money. This evidence would support a conviction of theft of property in the first degree or forgery in the second degree. Section 13A-1-9(b) is also satisfied, because there exists a rational basis for a verdict of guilty of the lesser-included offense. See Ex parte Oliver, supra. There is no error in the trial court's charge to the jury that forgery in the second degree was a lesser-included offense of theft of property in the first degree.
 B.
Harris also argues that the trial court erred in allowing into evidence testimony by Officer Thornton concerning Harris's demonstration of his ability with "pipe bombs." The following transpired during the direct examination of Officer Thornton:
 "[Prosecutor]: Did Larry Harris exhibit to you any kind of unusual or threatening behavior?
"A: No, ma'am.
 "Q: Did he ever do anything — did he ever make any sort of veiled threats or suggest to you in any manner that it might be better for you not to testify, directly or indirectly?
"A: No, ma'am, not about testifying or anything.
 "Q: Did he ever show or demonstrate for you his ability with pipe bombs?
 "[Defense Counsel for Appellant Harris]: Judge, I object to that. I don't know what in the world it's got to do with anything.
 "THE COURT: I don't either, but I see nothing wrong with it. Overruled.
"A: Yes, ma'am.
"Q: And do you know —
 "THE COURT: If she's not leading into something, I'll certainly tell the jury to exclude it.
"Go ahead.
 "Q: And did you have knowledge that he knew how to and enjoyed making pipe bombs?
"A: I'm sorry, say what?
 "Q: Did you have knowledge or had he ever previously showed you his pipe bombs and blown them up for you?
"A: Yes, ma'am.
 "Q: And after you became involved in this investigation did he show you again his pipe bombs?
"A: Yes, ma'am.
 "Q: And did he make any sort of statements to you with regard to those bombs? *Page 1059 
 "A: Statements such as? I mean I don't quite understand what you're saying here. Okay, you — say what, now? You've got to be more specific. I really don't know, like what you're going —
 "Q: Okay. You are familiar with the fact that Larry Harris made pipe bombs?
"A: Yes, ma'am.
 "[Defense Counsel for Appellant Aucoin]: Your Honor, I object to her leading.
 "Q: After you began to cooperate with the DA's office in this investigation, did Larry Harris's interest in showing you pipe bombs increase?
 "A: No, ma'am. I wouldn't say it increased. He showed me several of them.
 "Q: And did he just show them to you or did he blow them up for you?
"A: He blew them up.
 "Q: And did he tell you that he was adept at or good at making pipe bombs or did he in any way specify what he could do with a pipe bomb?
 "A: Yes, ma'am, he said that he could blow a — he could (unintelligible) a pipe bomb and be at home when it went off. He could do one 10, 15, 30 minutes, 45 minutes, where it would blow up later on.
"Q: Did you feel threatened by Sgt. Harris?
"A: No, ma'am, not particularly.
 "[Defense Counsel for Appellant Harris]: Judge, based upon that I'd ask Your Honor to ask the jury to exclude that testimony from their consideration and for a cautionary instruction on [prosecutor's] fishing expedition.
 "THE COURT: If you can't tie it up better than that, I am.
 "Do you feel like you were shown these, quote, pipe bombs as any threat to you?
 "WITNESS: He didn't — you know, he didn't ignite one and lead me to believe that he was going to blow me up. The only thing it did do is make me more — a watchful eye towards him. In other words, respect him much more.
"THE COURT: I overrule your objection then."
This testimony concerning appellant Harris's ability with and enjoyment of exploding pipe bombs was clearly irrelevant, as evidenced by the trial court's comments. In Alabama, evidence is considered relevant and admissible "if it has any probative value, however slight, upon a matter in the case." C. Gamble,McElroy's Alabama Evidence § 21.01(1), (3d ed. 1977). The exploding of pipe bombs by appellant Harris has no probative value on any matter in this case.
Furthermore, this evidence was clearly introduced by the prosecution to show appellant Harris's bad character. However, "[t]he prosecution, like the accused, is relegated to proving character via general reputation." C. Gamble, McElroy's AlabamaEvidence § 26.01(1) (3d ed. 1977). See also Henry v. State,533 So.2d 692 (Ala.Cr.App. 1988). The propensity of such evidence to prejudice the appellant before the jury is clear. Therefore, because this evidence was neither relevant nor a proper means of introducing evidence of the appellant's bad character and, furthermore, because it could have substantially prejudiced the appellant, we find that its introduction constituted reversible error.
AFFIRMED AS TO APPELLANT AUCOIN; REVERSED AND REMANDED AS TO APPELLANT HARRIS.
All Judges concur.